IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-01-00280-CR

 

Clarence Randolph Bryant,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 220th District Court

Bosque County, Texas

Trial Court No. 13,398

 



MEMORANDUM  Opinion



 








          A jury convicted Clarence Randolph Bryant of felony driving
while intoxicated.  On original submission, this Court reversed the conviction
and rendered a judgment of acquittal because the State failed to place in
evidence the parties’ stipulation that Bryant had two prior DWI convictions.  See
Bryant v. State, 135 S.W.3d 130, 135-36 (Tex. App.—Waco 2004).  The Court
of Criminal Appeals reversed, concluding that Bryant’s stipulation amounted to
“a judicial admission which removed the need for proof of those convictions.”  Bryant
v. State, No. PD-0672-04, 2005 Tex. Crim. App. LEXIS 517 at *12 (Tex. Crim. App. Apr. 6, 2005).  We will affirm the conviction.

Bryant contends in his sole issue that the
evidence is legally insufficient to support his conviction because the State
failed to place the parties’ written stipulation in evidence.  However, “[b]y entering into that stipulation, Bryant waived ‘his
right to put the government to its proof of that element’” and “cannot complain
on appeal that the State failed to prove ‘an element to which he confessed.’”  Id. 2005 Tex. Crim. App. LEXIS 517 at **12-13 (quoting U.S. v. Harrison,
204 F.3d 236, 240 (D.C. Cir. 2000); U.S. v. Branch, 46 F.3d 440, 442
(5th Cir. 1995)).  Accordingly, we overrule Bryant’s sole issue and affirm the
judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed August 10, 2005

Do not publish

[CRPM]

 

 






vice regarding Bollgard. A final, unnumbered document was described as correspondence between\
Monsanto and its law firm. \
'

var WPFootnote11 = '                            The Plaintiffs assert that, because the dates shown at the bottom of the privilege logs attached to some of the\
affidavits as exhibits are after the dates on which the affiants signed their affidavits, Respondent could have concluded\
that the affidavits were unreliable and based his decision on that alone. We disagree. The affidavits which refer to\
a privilege log state that the log is a “list of documents by description which contain or reflect” a privilege. It is the\
documents themselves, not the privilege log listing the documents, which contain the privileged material and about\
which the affiant has personal knowledge.
\
'

var WPFootnote12 = '                            “Uncontroverted” as to the facts stated in the affidavit. See, however, our discussion of the “crime-fraud”\
exception in Rule 503.
\
'

var WPFootnote13 = '                            See footnote 12.
\
'

var WPFootnote14 = '                            Those documents which were not specifically identified in the affidavits of Coombes, Barton, and Shackleford.
\
'

var WPFootnote15 = '                            Because Relators adduced evidence in the form of affidavits, we need not decide whether the current rules still\
allow a claim of privilege to be based only on the disputed information or material itself. See Weisel Enter. Inc. v.\
Curry, 718 S.W.2d 56, 58 (Tex. 1986) (orig. proceeding) (“Often the documents themselves will be the only evidence\
which substantiates (or refutes) the claimed privilege.”).
\
'

var WPFootnote16 = '                            See footnote 3.
\
'

var WPFootnote17 = '                            Thus, the persons sending and receiving the documents in this case are, for the most part, employees who are\
“representatives.”
\
'

var WPFootnote18 = '                            Although once litigation is anticipated, events in the field may have more significance. And, under those\
circumstances, the work product privilege may be available.
\
'

var WPFootnote19 = '                            Some communications have copies of other documents attached that appear otherwise discoverable. Because they\
are part of a privileged communication they are protected in this context. Pittsburgh Corning Corp. v. Caldwell, 861\
S.W.2d 423, 424-25 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding); Keene Corp. v. Caldwell, 840\
S.W.2d 715, 719-20 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding). We have no way to know if these\
attachments have been disclosed under another request.
\
'

var WPFootnote20 = '                            The document designated PR-RS-049, described as a memo regarding licensing terms, is listed on the privilege\
log but a copy of the document is not contained in the materials reviewed by the trial court. Because the affidavit and\
privilege log assert the attorney-client privilege, the document will remain privileged. We have no way to determine\
if Relators have already provided Plaintiffs with the document.
\
'

var WPFootnote21 = '                            We recognize that there are instances in which disclosure to an outside firm is so unrelated to a privilege that the\
disclosure will result in a waiver.
\
'

var WPFootnote22 = '                            See footnote 14.
\
'

var WPFootnote23 = '                            The only affidavit specifically referencing the PR-AS privilege log is that of Ann Shackelford. She states that\
the document designated as AS-017 contains her handwritten notes. The “investigative” (now “work product”)\
privilege is listed as the privilege asserted. \
'

var WPFootnote24 = '                            Affidavits establishing the identity of the authors of documents PR-INV-318 and PR-INV-322 were filed on May\
25 shortly after the court issued its letter ruling disclosing the documents. Affidavits must be served “at least seven\
days before the hearing or at such other reasonable time as the court permits.” Tex. R. Civ. P. 193.4(a). Because\
these affidavits were not filed seven days before the hearing and were filed after the court had issued its ruling, we\
have not considered them.
\
'

var WPFootnote25 = '                            Freeman v. Bianchi, 820 S.W.2d 853, 861 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding), and\
Granada Corp. v. First Court of Appeals, 844 S.W.2d 223, 227 (Tex. 1992) (orig. proceeding), involve the same\
parties. The First Court of Appeals determined that the crime-fraud exception applied to certain documents. Freeman,\
820 S.W.2d at 862. Granada filed a mandamus proceeding in the Supreme Court which determined that the court of\
appeals correctly held that the documents fell within the crime-fraud exception. Granada, 844 S.W.2d at 227. \
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}
















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-137-CV

IN RE MONSANTO COMPANY, ET AL.
 

 Original Proceeding
                                                                                                                       

O P I N I O N
                                                                                                                       

      Relators, Monsanto Company and other entities, seek a writ of mandamus requiring Respondent,
the Honorable Robert Stem, Judge of the 82nd District Court of Falls County, to vacate an order by
which he denied their claims of privilege as to almost 400 documents. The Real Parties in Interest
(Plaintiffs) are farmers and farming entities who planted Relators’ genetically-engineered cotton seed
during the 1996 growing season. They seek damages for spraying costs and lost yields, alleging that
Relators made false claims concerning the insect-resistant nature of the product. During the litigation,
a discovery dispute arose concerning whether the attorney-client and work product privileges apply to
certain documents. 
THE UNDERLYING LITIGATION 
      Monsanto Company (Monsanto) developed a gene technology called “Bollgard” designed to produce
cotton plants that are resistant to certain insects. The Bollgard gene was spliced into cotton seed
prepared by Delta and Pine Land Company (“D&PL”) and distributed by other Relators. After
problems developed in the fields during the growing season, the Plaintiffs filed suit against Relators on
August 30, 1996, alleging fraud and usury. 
      The Plaintiffs served Relators with requests for production. Relators produced numerous documents
but withheld certain documents asserting several privileges, including attorney-client, work product, and
trade secrets.


 Relators filed a motion for a protective order, supported with affidavits. The Plaintiffs
filed a motion to compel production of the documents. Relators responded to the motion to compel and
supplemented their motion for a protective order with more affidavits. “Privilege logs” were furnished
identifying the privilege(s) asserted to each document and describing the documents to which the
privileges were claimed. The privilege logs group the disputed documents into four sets. The Plaintiffs
objected to Relators’ affidavits on the grounds that they did not show personal knowledge of the persons
making the affidavits. The Plaintiffs also filed an affidavit in an attempt to establish the crime-fraud
exception to the attorney-client privilege.
      The court conducted a hearing on May 11, 1999. By that time, Relators had reduced the number
of documents to which they claimed a privilege to the approximately 400 now at issue. At the hearing,
neither party offered additional evidence; both relied on their respective affidavits; each asked the court
to review the documents in camera. The court took the matter under advisement and conducted an in
camera inspection of the documents. On May 25, the court ordered that all but two of the documents
be immediately released to the Plaintiffs, who took possession of the documents and made a copy of
each. When Relators asked for a delay to seek relief by mandamus, counsel for the Plaintiffs agreed to
wait until noon on May 27 to review the copies of the documents. By then, the originals had been
returned to the Respondent.
THIS PROCEEDING
      Relators filed this original proceeding on May 27. At their request, we granted emergency relief
directing that the documents not be reviewed by the Plaintiffs, that no further copies be made, and that
the copies already made be immediately transmitted to the clerk of this court. Plaintiffs complied with
that order.
      Plaintiffs filed a response to the petition, and we heard oral argument.
      Relators argue that the court abused its discretion in finding only two of the almost 400 documents
to be privileged. They assert that they met the burden of alleging and proving the privileges and that
the Plaintiffs did not controvert the privileges.


 They further say they have no adequate remedy at law. 
The Plaintiffs, on the other hand, assert: Monsanto failed to prove any privilege; Respondent did not
abuse his discretion; the “crime-fraud exception” set out in Rule of Evidence 503(d)(1) applies to the
documents for which the attorney-client privilege is claimed; and Monsanto waived the privileges by
substantially disclosing the documents.
STANDARD OF REVIEW
      To justify mandamus relief, Relators must establish that the court committed an abuse of discretion
and that they have no adequate legal remedy. Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992)
(orig. proceeding). 
      A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as
to amount to a clear and prejudicial error of law." Johnson v. Fourth Court of Appeals, 700 S.W.2d
916, 917 (Tex. 1985). This standard, however, has different applications in different circumstances.
      On factual issues or matters committed to the trial court's discretion, the reviewing court may not
substitute its judgment for that of the trial court. Walker, 827 S.W.2d at 840. The relator must establish
that the trial court could reasonably have reached only one decision. Id. Even if the reviewing court
would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown
to be arbitrary and unreasonable. Id.
       A review of a trial court's determination of the legal principles controlling its ruling, however, is
much less deferential. A trial court has no "discretion" in determining what the law is or applying the
law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will
constitute an abuse of discretion, and may result in reversal by extraordinary writ. Id.
      When a trial court erroneously orders the production of documents protected by a privilege, the
aggrieved party has no adequate remedy at law. See id. at 843-44; In re Continental General Tire, 979
S.W.2d 609, 615 (Tex. 1998) (orig. proceeding) (trade secrets); Humphreys v. Caldwell, 888 S.W.2d
469, 471 (Tex. 1994) (orig. proceeding) (“attorney work product”); Osborne v. Johnson, 954 S.W.2d
180, 183 (Tex. App.—Waco 1997, orig. proceeding); Marathon Oil Co. v. Moyé, 893 S.W.2d 585, 589
(Tex. App.—Dallas 1994, orig. proceeding). Thus, the central issue we must determine in this
proceeding is whether any document the Respondent ordered produced is covered by a privilege
prohibiting involuntary disclosure.
THE ATTORNEY-CLIENT PRIVILEGE
      "A client has a privilege to refuse to disclose and to prevent any other person from disclosing
confidential communications made for the purpose of facilitating the rendition of professional legal
services to the client." Tex. R. Evid. 503(b). The purpose of the attorney-client privilege is to secure
the free flow of information between attorney and client on legal matters, without the fear that details
of their communication will be disclosed. Ford Motor Co. v. Leggat, 904 S.W.2d 643, 647 (Tex.
1995); In re Bloomfield Mfg. Co., 977 S.W.2d 389, 392 (Tex. App.—San Antonio 1998, orig.
proceeding). 
      The “joint-defense” privilege protects “confidential communications made for the purpose of
facilitating the rendition of legal services . . . by the client or a representative of the client, or the
client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing
another party in a pending action and concerning a matter of common interest therein.” Tex. R. Evid.
503(b)(1)(C). The “joint-defense” privilege is included within the attorney-client privilege. Id. 
      Effective March 1, 1998, Rule of Evidence 503 was amended to adopt the “subject matter” test for
an entity's assertion of the privilege, replacing the “control group” test previously used. Tex. R. Evid.
503(a)(2) & cmt; National Tank Co. v. Brotherton, 851 S.W.2d 193, 197-98 (Tex. 1993). Under the
subject-matter test, an employee's communication is deemed to be that of the corporation/client if:
the employee makes the communication at the direction of his superiors in the corporation and
where the subject matter upon which the attorney's advice is sought by the corporation and dealt
with in the communication is the performance by the employee of the duties of his employment. 
 
National Tank, 851 S.W.2d at 198 (quoting Harper & Row Publishers, Inc. v. Decker, 423 F.2d 487,
491-92 (7th Cir. 1970), aff'd per curiam by an equally divided court, 400 U.S. 348, 91 S.Ct. 479, 27
L.Ed.2d 433 (1971)).
      There is no attorney-client privilege if the “crime-fraud” exception in Rule 503 applies: “If the
services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit
what the client knew or reasonably should have known to be a crime or fraud.” Tex. R. Evid.
503(d)(1). 
THE WORK PRODUCT PRIVILEGE
      “Work product” is now defined in the discovery rules as:
(1) material prepared or mental impressions developed in anticipation of litigation or for trial
by or for a party or a party's representatives, including the party's attorneys, consultants, sureties,
indemnitors, insurers, employees, or agents; or
(2) a communication made in anticipation of litigation or for trial between a party and the
party's representatives or among a party’s representatives, including the party's attorneys,
consultants, sureties, indemnitors, insurers, employees, or agents.
 
Tex. R. Civ. P. 192.5(a). This definition encompasses the “attorney work product” and “party
communications” discovery exemptions in former Rule 166b. Id. cmt. 8. 
      Rule 192.5(b) further elaborates on what work product is protected:
(1) Protection of Core Work Product—Attorney Mental Processes. Core work product—the
work product of an attorney or an attorney's representative that contains the attorney's or the
attorney's representative's mental impressions, opinions, conclusions, or legal theories—is not
discoverable.
(2) Protection of Other Work Product. Any other work product is discoverable only upon a
showing that the party seeking discovery has substantial need of the materials in the preparation of
the party's case and that the party is unable without undue hardship to obtain the substantial
equivalent of the material by other means.
 
Id. 192.5(b).



      Litigation is “anticipated” when two tests are met: (1) whenever the circumstances would indicate
to a reasonable person that there is a substantial chance of litigation, and (2) the party now asserting the
privilege had a good faith belief that litigation would ensue. National Tank, 851 S.W.2d at 207. A
party may reasonably anticipate suit being filed and prepare for the expected litigation before anyone
manifests an intent to sue. Id. at 204. Actual notice of a potential lawsuit is not required for a party
to anticipate litigation. Trevino v. Ortega, 969 S.W.2d 950, 956 (Tex. 1998). To determine when a
party reasonably anticipates or foresees litigation, the trial court must look to the totality of the
circumstances and decide whether a reasonable person in the party's position would have anticipated
litigation and whether the party actually did anticipate litigation. Id.
APPLYING THE REVISED DISCOVERY RULES
      Three questions initially arose when considering the privileges in question: (1) because some of
the Relators are out-of-state corporations, does Texas law governing attorney-client privilege apply or
does the substantive law of the jurisdiction(s) where the documents were created or where the particular
Relator is domiciled apply?; (2) because some of the documents predate the adoption of the “subject
matter” test that replaced the “control group” test, which Texas test applies?;


 and (3) because the
discovery rules were amended effective January 1, 1999, and Relators’ motion for a protective order
was filed after that date, do the new work product rules of Rule 192.5 apply or has former Rule 166b,
now repealed, somehow been continued in effect for discovery requests made prior to its repeal? Our
task became somewhat simpler when the parties agreed that Texas attorney-client privilege law applies,
that the “subject-matter” test applies to these claims of attorney-client privilege, and that Rule 192.5
should be applied to this proceeding. 
      Because the rules have been recently revised with respect to discovery and the method of claiming
privileges, we are to a large extent free to write on a clean slate in implementing the rules.
      A party should no longer “object” to a request for written discovery on grounds that the requested
material or information is privileged.


 Tex. R. Civ. P. 193.2(f). Instead, the resisting party should,
in a response or separate document: (1) state that information or material responsive to the request has
been withheld; (2) identify the request to which the information or material relates; and (3) identify the
privilege or privileges asserted.


 Id. 193.3(a). 
      A party seeking discovery who desires to pursue information or material to which a privilege has
been claimed may “serve a written request that the withholding party identify the information and
material withheld.” Id. 193.3(b). The resisting party must, within 15 days after receiving such a
request, serve a response (commonly called a “privilege log”) that: (a) asserts a specific privilege in
each item of information or material or a group of items and (b) describes the information or materials
withheld in such a way that the requesting party can assess the applicability of the specific privilege, but
not in such a way as to reveal the privileged information itself or otherwise waive the privilege. Id. 
      Any party may request a hearing on a claim of privilege asserted under Rule 193. Id. 193.4(a). 
The party asserting the privilege must “present any evidence necessary to support the objection or
privilege” by live testimony or affidavits that were served at least seven days before the hearing or at
such other reasonable time as the court permits.


 Id. If the court sustains the claim of privilege, the
resisting party has no further duty to respond to that request. Id. 193.4(b). If the claim of privilege is
denied, the resisting party must produce the requested information or material within 30 days or at such
time as the court orders. Id. 
      When the party asserting a privilege has made a prima facie case for its claim, the requesting party
has the burden to point out to the court which specific documents or groups of documents it believes
require inspection. Otherwise, trial judges will be required to inspect untold numbers of documents. 
The requesting party should be in a position to do so based upon (1) the contents of the privilege log,



(2) other discovery and documents, (3) discovery specifically designed to test the claim of privilege, and
(4) the evidence at the hearing. If the court determines that an in-camera review of some or all of the
requested discovery is necessary, that material must be segregated and produced to the court in a sealed
wrapper within a reasonable time following the hearing. Id. 193.4(a). 
      Applying the foregoing rules to this case, we find that Relators had the burden to claim the
privilege(s) in a response or separate document, which they did. Id. 193.3(a). They had to claim a
specific privilege and identify each document in such a way as to allow the Plaintiffs to assess the
applicability of that privilege and establish proof of the privilege at the hearing. Id. 193.3(b). Relators
say they did. 
THE HEARING
      At the hearing, Relators had the burden of proving the privilege they asserted to each document by
testimony or affidavit. Id. 193.4(a). They relied on affidavits. Relators’ original motion for protective
order was supported by six affidavits. It was supplemented with nine additional affidavits. Relators
served “privilege logs” which: identified each document by “Bates number,” number of pages, date,
document title, document type, document traits, author/source (if known), and recipient(s) (if
applicable); identified the persons receiving a copy of the document; and identified the privilege(s)
asserted as to each document.



      After the hearing, the court chose to review all of the documents in camera. See id.
OUR REVIEW
      We will now review the ruling which allowed the Plaintiffs to discover nearly all the disputed
documents.
Waiver
      We initially inquire whether, as the Plaintiffs assert, the information Relators furnished at the
hearing was so extensive as to waive the privileges they were claiming as to any of the documents. 
During argument to the court, Relators tendered copies of some of the documents listed in the privilege
log(s) to the court but not to Plaintiffs. Relators referred to portions of those documents, arguing that
they established the date Relators “anticipated litigation.”


 
      Plaintiffs raised waiver under Rule of Evidence 511 by post-hearing briefs. Tex. R. Evid. 511. 
We do not find that Relators' disclosure to the court constituted waiver. A privilege is waived under
Rule 511 if the holder of the privilege “voluntarily discloses or consents to disclosure of any significant
part of the privileged matter unless such disclosure itself is privileged.” Id. Although Relators' oral
description of the contents of the documents gave, in some instances, more information than they had
listed on the corresponding privilege log, we do not believe that the description was a disclosure of a
“significant part” of the privileged matter. 
Affidavits as Evidence
      Next, we inquire whether the affidavits were before the court at the hearing. They were not
“offered into evidence.” Nevertheless, the record of the hearing shows that the parties and the court
undisputedly considered the affidavits. Although formal admission into evidence would be better, we
have held that under these circumstances no formal offer into evidence is necessary. See Osborne v.
Johnson, 954 S.W.2d 180, 186 (Tex. App.—Waco 1997, orig. proceeding).
      Next, the Plaintiffs point out that they objected to the affidavits on the grounds that they were not
based on the personal knowledge of the affiants. We reject this assertion for two reasons. First, they
obtained no ruling on their objections. As we have said in the summary-judgment context, without a
ruling on an objection in the record, we cannot determine whether the trial judge considered the
objected-to evidence in making his decision. See Eads v. American Bank, N.A., 843 S.W.2d 208, 211
(Tex. App.—Waco 1992, no writ). Thus, we hold that the affidavits remained part of the “evidence”
in support of Relators’ contention that the various documents are privileged. Second, we have reviewed
the affidavits and find that they do establish the personal knowledge of the affiants. The affidavits
attached to the supplemental motion state that the statements contained therein are “true and correct and
based upon [the affiant's] personal knowledge unless otherwise expressly stated.” None of the affidavits
“expressly stated” otherwise, thus we believe they sufficiently establish personal knowledge. They are
distinguishable from the type of affidavits which the Plaintiffs say are deficient. See Humphreys v.
Caldwell, 888 S.W.2d 469, 470 (Tex. 1994) (affidavits based on “personal knowledge and/or knowledge
which [the affiant] has been able to acquire on inquiry”).



Do the Affidavits Support the Claims?
      The mere listing of a specific privilege in a response or a privilege log does not prove that privilege. 
The response and log are the vehicles by which the privilege is claimed. Proof of the facts that justify
the claim of privilege is necessary. Tex. R. Civ. P. 193.4(a). Thus, we look to the affidavits.
      Do the affidavits establish prima facie claims of privilege to the various documents they describe? 
Yes and no.
      The majority of the affidavits simply identify numerous employees, representatives, and agents of
the Relators who were involved in the development or marketing of Bollgard cotton. During oral
argument, Relators argued that four affidavits in particular establish the privileged nature of the
documents listed in the four privilege logs tendered to the court. They assert that the Rule 503 attorney-client privilege is established for the documents listed in the “PR-RS” log by the affidavit of Jon Beusen
and for the documents listed in the “PR-DS” log by the affidavit of David Snively. Tex. R. Evid. 503. 
They assert that the Rule 192.5 work product privilege is established for the documents listed in the
“PR-INV” log by the affidavit of Brett Begemann and for the documents listed in the “PR-AS” log by
the affidavit of Ann Shackelford.
      The affidavit of Jon Beusen states that he has been an attorney for Monsanto since 1980. Exhibit
A to Beusen's affidavit is entitled “Log of Privileged Documents Numbered with 'PR-RS' Prefix.” It
lists 193 documents dated from 1990 to 1997. Two of the 193 documents do not list the “attorney-client” privilege as a claim on the log. These two documents list attorney work-product, investigative,
and party-communications as the privileges asserted. Of the remaining 191, one claims both the
attorney-client and work product privilege and 190 claim only the attorney-client privilege. Beusen’s
affidavit asserts that the documents reflect (1) attorney-client communications and (2) work papers
reflecting attorney mental processes developed in rendering legal services for Monsanto. He further
states that the documents were intended to be and were kept confidential, and were made for the purpose
of facilitating the rendition of legal services. 
      We believe that Beusen's uncontroverted affidavit


 establishes the attorney-client privilege and what
is now the “core work product” privilege as to each document for which the privileges are claimed in
the “PR-RS” privilege log. Tex. R. Evid. 503; Tex. R. Civ. P. 192.5. 
      The affidavit of David Snively states that he is an attorney employed by Monsanto. Attached to the
affidavit is Exhibit A, a log of 117 “PR-DS” documents dated from July 28, 1996, to October of 1997. 
Snively's affidavit states in part:
2. I am an attorney and have been licensed to practice law in the States of Indiana and Missouri
since 1979 and 1984, respectively. Since 1983, I have been employed by Monsanto Company
(“Monsanto”) as an attorney. I was asked to and did, in fact, provide legal services to Monsanto
as my client, generally in connection with Bollgard cotton. During the course of providing legal
services to Monsanto in connection with Bollgard cotton, documents containing confidential
attorney-client communications and attorney work product were generated. Attached hereto as
Exhibit A is a list of documents by description which contain or reflect (1) confidential attorney-client communications among me and other in-house and/or outside attorneys for Monsanto, or
other Monsanto employees, representatives or agents, and (2) work papers reflecting attorneys'
mental processes developed in rendering legal services to Monsanto. Those documents containing
confidential communications among me and other inhouse and/or outside attorneys for Monsanto
or other Monsanto employees, representatives, or agents, as well as those work-product documents
reflecting the mental processes of attorneys, were intended to be and were kept confidential, and
were made for the purpose of facilitating the rendition of professional legal services.
 
3. The documents described in Exhibit A, in addition to being attorney-client communications
and confidential attorney work product, were also generated in anticipation of litigation and in
connection with pending litigation concerning Bollgard cotton. Beginning at a time prior to the first
of those documents described in Exhibit A being generated, I and other Monsanto representatives
believed in good faith that there was a substantial chance that litigation would ensue and concluded
from the totality of the circumstances surrounding Monsanto's investigation, which included
reported threats of litigation, that there was a substantial chance that litigation would ensue. With
regard to the work-product documents described in Exhibit A, these documents were generated for
the purpose of preparing for litigation.
 
      We believe that Snively's uncontroverted affidavit


 establishes the attorney-client privilege and
what is now the “core work product” privilege as to each document for which the privileges are claimed
in the “PR-RS” privilege log. Tex. R. Evid. 503; Tex. R. Civ. P. 192.5. 
      The affidavit of Brett Begemann states that he is Monsanto's Regional Business Director, North
Central Region. He states that Monsanto began receiving complaints and threats of lawsuits in June
1996, continuing into July. Based on these complaints and threats, Monsanto concluded in June 1996
that there was a substantial chance that litigation would ensue. In contemplation of those claims,
Monsanto began investigating to prepare for the anticipated litigation. Begemann further states that the
Bollgard technology is patented and a trade secret. Although his affidavit does not refer to any
documents nor to a privilege log, it generally supports an “anticipation-of-litigation” date as early as
June of 1996. Although counsel at oral argument tried to connect this affidavit to the PR-INV log, it
does not reference any log and therefore cannot establish a prima facia privilege in the documents
described in the log.
      Ann Shackelford, legal coordinator for D&PL, executed two affidavits. The first states that D&PL
began receiving complaints and threats of lawsuits in June 1996 and continuing into July. It also lists
names of D&PL's outside counsel. Shackleford's supplemental affidavit lists the names of D&PL
employees and representatives who were involved with Bollgard cotton. Her affidavit does not refer
to a privilege log, but does identify document number PR-AS-017 as her handwritten notes. The first
affidavit generally supports the “anticipation-of-litigation” date and claim. Taken together, the affidavits
prove the work product privilege as to the document numbered PR-AS-017. Neither affidavit asserts
facts that establish a prima facie privilege in the remainder of the documents described in the “PR-AS”
log. 
      The only other affidavits which reference particular documents are those of Monsanto employees
Gary Barton and David Coombes. Both affidavits identify documents from the PR-INV log as their
“handwritten notes taken . . . at various meetings relating to Monsanto's Bollgard product.” These
affidavits, in conjunction with the other affidavits establishing “anticipation of litigation,” prove the
work product privilege as to the documents they describe.
Effect of Affidavits
      As to the documents designated “PR-RS” and “PR-DS,” Relators’ affidavits make out a prima facie
case of privilege. Because the party seeking the documents did not point out to the court which specific
documents identified in these logs it believed required inspection, Respondent could have sustained the
claims of privilege without more. See Tex. R. Civ. P. 193.4(a). As to the documents designated “PR-INV,” a prima facie showing was made as to the documents specifically listed in Coombes’ and Barton’s
affidavits. As to the documents designated “PR-AS,” a prima facie showing was made as to the
document numbered PR-AS-017. As to the remainder of the documents designated “PR-INV” and “PR-AS,” no prima facie showing was made. Thus, Respondent could have denied the claims of privilege
to these documents.
      In each instance, the results of the hearing relieved Respondent of the responsibility of reviewing
the documents in camera. The rules, however, allowed Respondent to determine whether an in-camera
inspection of any or all of the documents was necessary. Id. In reviewing them, he went above and
beyond what was required of him.  
In Camera Review
      Because the court inspected the documents in camera, we have exercised our discretion to also
review them. Marathon Oil Co. v. Moye, 893 S.W.2d 585, 593 (Tex. App.—Dallas 1994, orig.
proceeding) (“As a reviewing court, we may conduct our own in camera inspection to determine
whether a trial court properly applied the law of privilege to the documents.”) (citing Barnes v.
Whittington, 751 S.W.2d 493, 495 (Tex. 1988) (orig. proceeding)). Our inspection was to (a) determine
whether the documents matched their descriptions in the privilege logs; (b) with respect to the
documents listed in the “PR-RS” and “PR-DS” logs (as to which a prima facie showing of privilege was
made), determine whether any document so contradicts the affidavits as to destroy the claim of privilege
as to that document; and (c) with respect to the documents listed in the “PR-INV” and “PR-AS” logs
(as to which no prima facie showing of privilege was made),


 determine whether any document, in
conjunction with the other proof presented, established a privilege as to that document.



      Before we discuss the results of our in camera inspection, we should state the approach we took in
reviewing the documents. The justices assembled in the courtroom and examined the disputed
documents, one document at a time, and discussed those necessary to our decision. We considered each
document, in light of the affidavits, on its own. We did not use information contained in one document
to “bootstrap” a privilege to another document. In other words, one document to which a privilege was
established or asserted was not considered as evidence to establish a privilege asserted to another
document. Additionally, we did not consider any information listed on the privilege logs as evidence. 
The logs were not incorporated into any affidavits and thus the information contained in the logs is no
more than an unproven assertion like any other pleading.
      Both the attorney-client privilege and the work product privilege have been recently expanded—the
former by changing from the control-group test to the subject-matter test and the latter by combining
privileges and eliminating the “subsequent to the occurrence” and “particular pending suit”
requirements.



      Looking at the attorney-client privilege, first, the document must be a “communication.” Tex. R.
Evid. 503(b)(1). Second, employees of a party claiming the privilege are “representatives” within the
Rule if they have authority to “obtain professional legal services” or “to act on advice thereby
rendered.” Id. 503(a)(2)(A). A representative is also any person who, for the purpose of effectuating
legal representation for the client, makes or receives a confidential communication while acting in the
scope of the client’s employment.


 Id. 503(a)(2)(B). Third, because communications “between
representatives of a client” are protected if they otherwise meet the requirements of the Rule, a lawyer
need not be involved as an author or recipient. Id. 503(b)(1)(D). This is a very broad privilege as now
written.
      We recognize that it might be argued that all communications between corporate representatives
could be claimed as privileged on the basis that “the legal department can better represent us if we keep
them informed.” We reject that assertion. We do not believe that it is necessary for the legal
department to be advised of every development out in the field, no matter how minute.


 Thus, we
applied common sense to the contents of the documents.
      Turning to the work product privilege, we reviewed the documents in light of the two basic
categories specified in the rule: “core work product” and “other work product.” Tex. R. Civ. P. 
192.5(a). “Core work product” is basically unchanged from the former rule. As an attorney develops
a case in anticipation of litigation, documents or information containing the mental impressions,
opinions, conclusions, and legal theories are protected from discovery. Id. This privilege is usually
not difficult to apply. “Other work product,” however, includes material prepared or mental
impressions developed in anticipation of litigation by or for a party or its representatives. Id. 
Representatives include attorneys, consultants, sureties, indemnitors, employees, and agents. “Other
work product” also includes communications made in anticipation of litigation or for trial among
representatives of a party. Thus, once a party anticipates litigation, a very broad privilege attaches to
communications among its employees. 
      While “core work product” is not discoverable, “other work product” is discoverable if the party
seeking discovery can establish a substantial need for the materials and its inability to obtain the
substantial equivalent of the materials without undue hardship. Id. 192.5(b). The Plaintiffs did not
attempt to show a “substantial need” for “other work product.” 
      Applying these broad rules, we considered the contents of each document in conjunction with the
other evidence presented. We found that the evidence established the attorney-client privilege in some
documents and the work product privilege in others.
A. ARE THE DOCUMENTS DESCRIBED PROPERLY?
      Here, we asked: Do the documents match their privilege-log descriptions? We find that the
privilege logs fairly describe the documents and comply with Rule 193.3(b). Id. 193.3(b).
B. DOES ANY DOCUMENT DESTROY THE PRIVILEGE?
      We asked: Does any document listed in the PR-RS or PR-DS log so contradict the affidavit as to
destroy the privilege as to that document?
      (1) PR-RS LOG DOCUMENTS
      The PR-RS log asserts the attorney-client privilege as to all but two documents, and lists “attorney
work product” (now “core work product”) as the privilege claimed in those two. Beusen's affidavit
supports the attorney-client privilege and core work product privilege. 
      Our review of the documents revealed: (a) copies of electronic mail and memoranda, many with
drafts of legal documents attached; (b) facsimile cover pages with drafts of legal documents, memoranda
or reports attached; (c) reports with handwritten notes; (d) memos regarding patent applications, some
with drafts of legal documents attached; (e) drafts of pages from legal documents with handwritten
notes; and (f) letters to and from outside counsel. We noted that some documents show either no date,
no author, no recipient, or some combination thereof.
      Many of the memos and e-mails between Monsanto's attorneys and representatives ask for
“suggestions,” “review,” and “input.” 
      The memoranda regarding possible patent problems and proposed strategies, drafts of patent
applications, and drafts of letters to the Environmental Protection Agency request comments from those
reviewing the draft. Some memos include exchanges between Monsanto's attorneys and representatives
regarding the possible purchase of stock in other entities or the purchase of other companies. Copies
of e-mail between Monsanto's attorneys and representatives discuss the proposed agreements and the
valuation of other companies targeted for purchase.


 
      “Confidential communications made for the purpose of facilitating the rendition of professional legal
services” are privileged. Tex. R. Evid. 503(b). The expanded “subject matter” test deems an
employee's communication privileged if it is made at the direction of his superiors and its subject matter
is the performance of the employee's duties. Id. 503(a)(2); National Tank, 851 S.W.2d at 198.
Although some documents have many persons listed as a recipient of either the original or of a “carbon
copy,” all recipients (with the exception of a few documents discussed below) are Monsanto's employees
or attorneys. We believe the contents of these communications fall within the subject-matter test of Rule
503. Thus, the majority of the documents designated in the PR-RS log are entitled to the attorney-client
privilege. Tex. R. Evid. 503(b); Tex. R. Civ. P. 192.5(b). 
      Several documents are reports written by Monsanto attorneys with no designated recipient. These
appear to be “core work product” (attorney work product containing the attorney’s mental impressions,
conclusions, and legal theories) rather than “communications.” Id. Relators did not assert the “core
work product” privilege as to these documents on the privilege log; rather they relied solely on the
attorney-client privilege. Beusen’s affidavit, however, states that the documents listed in the attached
PR-RS privilege log are either “communications” or work product. Thus, we accept his assertion that
these documents were “communicated” within the meaning of the Rule. Tex. R. Evid. 503.
      Two documents show recipients who are not designated as Relators’ representatives or agents: 
            PR-RS-661: a letter on “Calgene” letterhead; and 
            PR-RS-739:  a draft agreement with “Applied Genetics” designated as the recipient. 
Because these two documents have been disclosed to third parties who were not proven to be
“representatives of the client” as defined in the Rule, they are not “confidential communications”
falling within the attorney-client privilege. Tex. R. Evid. 503(b).


 Thus, they will be disclosed.
      The following documents are contained in the materials, but are not listed on the privilege log. 
They are:
            PR-RS-353: a memo regarding the EPA's approval of the cotton EUP;
            PR-RS-594: a memo regarding a letter to the EPA; and
            PR-RS-676: a memo regarding the anticipated registration of Bollgard cotton.
They will be disclosed, as their status as privileged documents is not before us. 
      (2) THE PR-DS LOG DOCUMENTS
      The PR-DS log asserts the attorney-client privilege, the attorney work product privilege, and the
investigative privilege as to each document. Our review of the documents reveals: (a) copies of
electronic mail; (b) memoranda, some with handwritten notes; and (c) two reports written by a
Monsanto attorney regarding litigation questions. The majority of these documents are confidential
communications between Monsanto attorneys and employees or are the core work product of a Monsanto
attorney. Id. 503(b); Tex. R. Civ. P. 192.5(b). 
      Some of the documents have “Sargent & Potratz,” an advertising and public relations firm, as a
recipient. The affidavit of David Rhylander states that the firm is an agent and representative of
Monsanto. The affidavit of David Snively states that the documents listed in the PR-DS log are
attorney-client or core work product documents. Because these affidavits were unchallenged, we will
not disclose these documents which were sent to an outside firm.


 The remainder of the documents are
within the asserted privileges. Thus, we will not disclose any of the documents listed in the PR-DS log.
C. DOES ANY DOCUMENT ESTABLISH PRIVILEGE IN CONJUNCTION WITH THE OTHER
EVIDENCE PRESENTED?
      In reviewing the PR-AS and PR-INV logs (to which no prima facie showing was made),


 we asked
whether any document listed, in light of the information contained in the affidavits, shows that Relators
are entitled to claim a specific privilege as to that document.
      (1) THE PR-AS LOG DOCUMENTS
      The PR-AS log asserts the investigative privilege (now “work product”) as to each document.


 It
claims attorney work product (now “core work product”) as to six of the documents and additionally
asserts the attorney-client privilege to two of those six. Our review of the documents revealed: (a)
copies of electronic mail; (b) memoranda between D&PL employees; (c) handwritten work papers; and
(d) reports. The documents are communications between D&PL employees, D&PL attorneys, or a
combination.
      The two memos to which the attorney-client privilege is asserted fall within that privilege, when
considered with the affidavits. Both regard Bollgard litigation and appear to facilitate the rendition of
legal services. Tex. R. Evid. 503(b).
      Four documents fall within the work product definition. Tex. R. Civ. P. 192.5(a). They contain
(1) material prepared or mental impressions developed in anticipation of litigation or (2) communications
made in anticipation of litigation between party representatives. Id.
      The remainder of the documents, considered in light of the information contained in the affidavits,
do not show that Relators are entitled to claim a specific privilege as to those documents. Thus, they
will be disclosed. They are: 
            PR-AS-002: a report which does not show its author on its face;
            PR-AS-012: handwritten notes which do not show an author;
            PR-AS-021: a memo written by a person not identified in any affidavit as a D&PL employee;
            PR-AS-024:  a memo with the same unlisted person shown as a recipient;
            PR-AS-028: a report which does not identify the author or the recipient; and
            PR-AS-035:  a memo to all D&PL employees which exceeds the scope of the asserted
privilege.
      (2) THE PR-INV LOG DOCUMENTS
      The PR-INV log asserts the investigative privilege (now “work product”) as to each document. 
Additionally, it asserts the attorney-client privilege and/or attorney work product privilege as to eleven
of the documents.
      Our review of the documents reveals: (a) copies of electronic mail; (b) memoranda between
Relators' employees (c) handwritten work papers and meeting notes; (d) facsimile cover pages; (e)
reports; (f) letters; and (g) drafts of advertisements. Like other documents we reviewed, some
documents show either no date, no author, no recipient, or some combination.
      The majority of the documents fall within the “work product” definition. Tex. R. Civ. P. 192.5(a). 
Some of the documents fall within the attorney-client privilege. Tex. R. Evid. 503(b). 
      Those documents which do not fall within either privilege and will be disclosed are:
            PR-INV-044:     a report of questions and answers regarding Bollgard performance;
 
            PR-INV-049:     a memo regarding Bollgard questions and answers prepared by Monsanto and
sent to D&PL;
 
            PR-INV-169:     a memo on Bollgard written by “Randy”;
            PR-INV-318:     a report on a “East Texas Bollgard Problem” that does not show an author
on its face; and
 
            PR-INV-322:     a report on a Brazos River Bottom trip that does not show its author.



 
      Document PR-INV-060 is listed on the privilege log but a copy is not in the materials reviewed by
the trial court. Although we withheld document PR-RS-049 under similar circumstances, that document
had a specific affidavit establishing the attorney-client privilege. Because the privilege claimed as to
document PR-INV-060 is not supported by a specific affidavit, we will disclose the document.
CRIME-FRAUD EXCEPTION
      The Plaintiffs assert that the crime-fraud exception to the attorney-client privilege applies to the
disputed documents. Rule of Evidence 503(b)(1) provides an exception to the attorney-client privilege:
Furtherance of Crime or Fraud. If the services of the lawyer were sought or obtained to enable
or aid anyone to commit or plan to commit what the client knew or reasonably should have known
to be a crime or fraud.
 
Tex. R. Evid. 503(d)(1). Once the resisting party establishes the attorney-client privilege, the party
seeking the disputed documents may assert the crime-fraud exception to the privilege. El Centro del
Barrio, Inc. v. Barlow, 894 S.W.2d 775, 779 n.1 (Tex. App.—San Antonio 1994, orig. proceeding). 
The crime-fraud exception applies only if a prima facie showing is made of contemplated fraud. 
Granada Corp. v. First Court of Appeals, 844 S.W.2d 223, 227 (Tex. 1992) (orig. proceeding). There
must also be a relationship between the document sought and the prima facie proof offered. Id. 
      The prima facie proof must show "a violation sufficiently serious to defeat the privilege." Freeman
v. Bianchi, 820 S.W.2d 853, 861 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding).


 A prima
facie showing is sufficient if it sets forth evidence that would establish the elements of a fraud that was
ongoing or about to be committed when the document was prepared. Id. The fact that the plaintiff's
cause of action alleges fraudulent conduct is insufficient. Cigna Corp. v. Spears, 838 S.W.2d 561, 569
(Tex. App.—San Antonio 1992, orig. proceeding). The attorney-client privilege is lost only when the
legal communications or services were obtained to commit or plan to commit a fraud. Id.
      The Plaintiffs offered the affidavit of Richard Shanks, one of their attorneys, to make a prima facie
showing of the exception. He asserts that Relators knowingly made false statements regarding Bollgard
cotton when marketing and selling it to the Plaintiffs. Shanks' affidavit has attached several documents
which he contends show the false statements. 
      The affidavit and its attachments do not establish that legal services were obtained to commit or
perpetuate fraud. See id; Tex. R. Evid. 503(d)(1). Furthermore, the affidavit fails to establish a
relationship between the documents for which the privilege is challenged and the claim of fraud. See
Granada, 844 S.W.2d at 227. 
CONCLUSION
      Having reviewed the documents and the affidavits, we find that Relators established either the
attorney-client privilege, the work product privilege, or both in most of the documents. We further find
that the Plaintiffs did not make a sufficient showing to invoke the crime-fraud exception. Thus, we find
that Respondent abused his discretion by ordering the production of privileged documents. See Walker,
827 S.W.2d at 840. Relators have no adequate remedy at law. Id. at 843-44. 
      Respondent correctly ordered production of the documents that were not protected from disclosure
by a proven privilege. The documents which should be produced to Plaintiffs are:
            PR-RS:       RS-353; RS-594; RS-661; RS-676; RS-739;
            PR-DS:       None;
            PR-AS:       AS-002; AS-012; AS-021; AS-024; AS-028; AS-035; and
 
            PR-INV:     INV-044; INV-049; INV-060; INV-169; INV-318; INV-322.
 
No other documents described in the privilege logs should have been ordered produced to the Plaintiffs.
      We conditionally grant the writ of mandamus and direct Respondent to modify his order to allow
discovery of only the non-privileged documents listed above and to withhold from Plaintiffs the
remaining documents which are privileged. Because we are confident that Respondent will comply with
our decision, the writ will issue only if he fails to do so. 
      We stay our judgment for fourteen (14) days to allow the parties an opportunity to file a motion for
rehearing in this court or to seek relief from our determination in the Supreme Court. We will maintain
possession of the documents reviewed in camera and the copies delivered to our clerk by the Plaintiffs
until further order of this court or the Supreme Court.
 
                                                                              BILL VANCE
                                                                               Justice
Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Writ of mandamus conditionally granted 
Opinion delivered and filed August 31, 1999 
Publish