In re CONTINENTAL GENERAL
TIRE, INC., Relator.

No. 98–0125.

Supreme Court of Texas.

Argued Oct. 22, 1998.

Decided Nov. 12, 1998.

Julie Caruthers Parsley, John Cornyn, Eugene W. Brees, II, Austin, Kenneth J. Moran, Richmond, VA, for Relator.

Ray Chester, Waylon L. Allen, Austin, for Respondent.

PHILLIPS, Chief Justice, delivered the opinion of the Court, in which GONZALEZ, HECHT, ENOCH, SPECTOR, OWEN, BAKER and ABBOTT, Justices, join.

Under our rules of evidence, a party has a privilege to refuse to disclose its trade secrets "if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." *See* TEX.R. EVID. 507. The issue is whether Rule 507 protects from discovery a tire manufacturer's chemical formula for its "skim stock," a rubber compound used in tire manufacturing. The trial court ordered the manufacturer to produce the formula under a protective order, and the court of appeals denied the manufacturer's requested mandamus relief without opinion. We hold that, when a party resisting discovery establishes that the requested information is a trade secret under Rule 507, the burden shifts to the requesting party to establish that the information is necessary for a fair adjudication of its claim or defense. Because relator established that the formula was a trade secret, and because the real party in interest did not meet its burden of establishing necessity, we conditionally grant mandamus relief. Nothing in the relief we grant prohibits plaintiffs from seeking to discover the formula under the procedure we set forth.

## I

While Kenneth Fisher was driving his pick-up truck on Highway 190, his left front tire blew out, causing him to lose control of the vehicle. Fisher's truck crossed the median and struck Dora Pratt's car, killing Pratt and her passenger. Pratt's heirs, Luz Enid Rivera, Brenda Beatriz Killens, Gilberto De-Jesus Cruz, Dora Maria Cruz, and Toribio Nieves, filed the underlying products liability action against Continental General Tire, the manufacturer of the failed tire.

It is undisputed that the tire failed because its tread and outer belt separated from the inner belt. The belts are made from brass-coated steel cords encased in a skim-stock rubber compound. These belts, along with the other tire components, are assembled into a "green tire," to which heat and pressure are applied in a process called "vulcanization." This process causes the components in the tire, including the skim stock, to chemically bond with each other. Plaintiffs contend that either a design or manufacturing defect in the skim stock prevented the belts of Fisher's tire from properly bonding. To secure evidence to prove this claim, plaintiffs requested Continental to produce the chemical formula for the skim stock used on this tire.

Continental objected, claiming that the formula is a trade secret that Texas Rule of Evidence 507 protects. After a hearing, the trial court ordered Continental to produce the formula, subject to a protective order which the trial court had earlier entered for other confidential material produced by Continental.

The trial court stayed its order pending Continental's efforts to obtain mandamus review. After the court of appeals denied relief, we granted Continental's mandamus petition and heard oral argument.

## II

Continental claims that the skim-stock formula is protected by Texas Rule of Evidence 507, which provides in full:

> A person has a privilege, which may be claimed by the person or the person's agent or employee, to refuse to disclose and to prevent other persons from disclosing a trade secret owned by the person, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice. When disclosure is directed, the judge shall take such protective measure as the interests of the holder of the privilege and of the parties and the furtherance of justice may require.

TEX.R. EVID. 507. This rule, adopted in 1983, is based on Supreme Court Standard 508, a proposed rule of evidence promulgated by the United States Supreme Court in 1969. *See* 3 MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE § 508.01, at 508–5 (2d ed.1998); PRELIMINARY DRAFT OF PROPOSED RULES OF EVIDENCE FOR THE UNITED STATES DISTRICT COURTS AND MAGISTRATES, 46 F.R.D. 161, 270

(1969). Although Congress did not adopt Standard 508 as a federal rule of evidence, *see* McLaughlin, supra at 508–5, twenty states, including Texas, have adopted some version of it.[1]

This Court has never addressed the scope of Rule 507. Moreover, of the other jurisdictions adopting Supreme Court Standard 508, only two have directly considered its scope. *See Bridgestone/Firestone v. Superior Court,* 7 Cal.App.4th 1384, 9 Cal.Rptr.2d 709 (Cal. Ct.App.1992); *Rare Coin–It, Inc. v. I.J.E., Inc.,* 625 So.2d 1277 (Fla.Ct.App.1993).

In *Bridgestone/Firestone,* the plaintiffs sued the tire manufacturer for wrongful death caused by a tire failure. Claiming that belt separation caused the tire failure, the plaintiffs sought to discover defendant's compound formula. Defendant asserted California's trade secret privilege, which is virtually identical to our Rule 507. *See* Cal. Evid. Code § 1060. The trial court ordered defendant to produce the formula, and defendant sought interlocutory review.

The court of appeals, in analyzing the rule, first noted that a requesting party must establish more than mere relevance to discover trade secrets, or the statutory privilege would be "meaningless." 9 Cal.Rptr.2d at 712. "Allowance of the trade secret privilege may not be deemed to 'work injustice' within the meaning of Evidence Code section 1060 simply because it would protect information generally relevant to the subject matter of an action or helpful to preparation of a case." *Id.* Rather, to show "injustice," the party seeking to discover a trade secret

must make a prima facie, particularized showing that the information sought is relevant and necessary to the proof of, or defense against, a material element of one or more causes of action presented in the case, and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit.

*Id.* at 713. The court perceived this as a balancing process, in which the trial court must weigh the interests of both sides and "must necessarily consider the protection afforded the holder of the privilege by a protective order as well as any less intrusive alternatives to disclosure proposed by the parties." *Id.* Applying these principles, the court noted that plaintiffs' expert, although averring generally that the formula could assist him in determining a defect, did not "describe with any precision how or why the formulas were a predicate to his ability to reach conclusions in the case." *Id.* at 716. The court thus determined that the information, although perhaps useful, was not necessary to the plaintiffs' claim. The court consequently denied the discovery.

Similarly, in *Rare Coin–It,* the court was called upon to interpret section 90.506 of the Florida Statutes, a trade secret privilege identical to ours. The court held:

When trade secret privilege is asserted as the basis for resisting production, the trial court must determine whether the requested production constitutes a trade secret; if so, the court must require the party seeking production to show reasonable necessity for the requested materials.

625 So.2d at 1278.[2] *See also Inrecon v. Village Homes at Country Walk,* 644 So.2d 103, 105 (Fla.Ct.App.1994).

---

1. *See* Ala. R. Evid. 507; Alaska R. Evid. 508; Ark R. Evid. 507; Cal. Evid Code § 1060 (West 1998); Del R. Evid 507; Fla. Stat. § 90.506 (West 1998); Haw. R. Evid. 508; Kan Stat. Ann. § 60–432 (1997); La Code Evid. Ann. art. 513 (West 1998); Me. R. Evid. 507; Neb.Rev.Stat. Ann. § 27–508 (1997); Nev.Rev.Stat. § 49.325 (Michie 1997); N.H. R. Evid. 507; N.J. Stat. Ann. § 2A:84A–26 (West 1998); N.M. R. Evid 11–508; N.D. R. Evid. 507; Okla. Stat. Ann. tit. 12, § 2508 (West 1998); S.D. Codified Laws § 19–13–20 (West 1997); Tex.R. Evid. 507; Wis. Stat. Ann. § 905.08 (West 1997).

2. In *Southwestern Bell Telephone Co. v. State Corporation Commission,* 6 Kan.App.2d 444, 629 P.2d 1174 (Kan.App.1981), the court was called upon to decide whether confidential documents which Southwestern Bell produced to a regulatory authority during a rate rating should be made public. The court cited Kansas's version of Supreme Court Standard 508, *see* Kan. Stat. Ann. § 60–432, but noted that the privilege did not technically apply since Southwestern Bell had already produced the documents; the issue was the scope of subsequent protection. *Id.* at 1183. The court nonetheless articulated a test similar to that in *Bridgestone/Firestone* for determining whether the documents should be made public. *Id.* at 1183–84. *See also In re Application of Northwestern Bell Tel. Co.,* 223 Neb. 415, 390 N.W.2d 495, 499 (Neb.1986).

The approach adopted in California and Florida is consistent with the federal courts' treatment of trade secrets. Although Congress did not adopt Supreme Court Standard 508, the federal rules nonetheless allow a court, in the discovery context, to "make any order which justice requires to protect a party or person from ... undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way...." FED.R.CIV.P. 26(c)(7). Federal courts applying this rule recognize that "[t]here is no absolute privilege for trade secrets and similar confidential information." *Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) (quoting 8 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2043, at 300 (1970)); *see also Centurion Indus. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir.1981); *National Util. Serv., Inc. v. Northwestern Steel & Wire Co.*, 426 F.2d 222, 227 (7th Cir.1970); *A.H. Robins Co. v. Fadely*, 299 F.2d 557, 561 (5th Cir.1962); *Kleinerman v. United States Postal Serv.*, 100 F.R.D. 66, 69 (D.Mass. 1983); 6 MOORE'S FEDERAL PRACTICE § 26.46[16], at 26.144 (3d ed.1998). Rather, federal courts apply a balancing test with shifting burdens, comparable to that articulated by the California appellate court in *Bridgestone/Firestone*.

In federal court, the party resisting discovery must establish that the information sought is indeed a trade secret and that disclosure would be harmful. The burden then shifts to the requesting party to establish that the information is "relevant and necessary" to his or her case. If the trial court orders disclosure, it should enter an appropriate protective order. *See generally* 8 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2043 (1994); *see also, e.g., American Standard, Inc. v. Pfizer Inc.*, 828 F.2d 734, 740–41 (Fed.Cir.1987); *Heat & Control, Inc. v. Hester Indus.*, 785 F.2d 1017, 1025 (Fed.Cir.1986); *Centurion Indus. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir.1981); *In re Independent Serv. Org. Antitrust Litig.*, 162 F.R.D. 355, 356 (D.Kan.1995); *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 671 (S.D.Tex.

1990); *Culligan v. Yamaha Motor Corp.*, 110 F.R.D. 122, 125 (S.D.N.Y.1986). *Cf. Kleinerman v. United States Postal Serv.*, 100 F.R.D. 66, 69 (D.Mass.1983) (discovery of trade secrets required where "'the issues cannot be fairly adjudicated unless this information is available'") (quoting *Melori Shoe Corp. v. Pierce & Stevens, Inc.*, 14 F.R.D. 346, 347 (D.Mass.1953)); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1185 (D.S.C.1974) (" '[T]he courts are loath to order disclosure of trade secrets absent a clear showing of an immediate need for the information requested.'") (quoting 4 MOORE'S FEDERAL PRACTICE, ¶ 26.60[4], at 242–45 (2d ed.1970)).

This is ultimately a balancing test, in which the trial court must weigh all pertinent facts and circumstances. *See* Wright & Miller, § 2043 at 559 ("[T]he burden is on the party seeking discovery to establish that the information is sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information."). *See also Centurion Indus.*, 665 F.2d at 325 ("The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure.").

### III

■ Our trade secret privilege seeks to accommodate two competing interests. First, it recognizes that trade secrets are an important property interest, worthy of protection. Second, it recognizes the importance we place on fair adjudication of lawsuits. *See* PRELIMINARY DRAFT OF PROPOSED RULES OF EVIDENCE, Advisory Committee's Note to Rule 5–08, 46 F.R.D. at 271 ("The need for accommodation between protecting trade secrets, on the one hand, and eliciting facts required for full and fair presentation of a case, on the other hand, is apparent."). Rule 507 accommodates both interests by requiring a party to disclose a trade secret only if necessary to prevent "fraud" or "injustice." Stated alternatively, disclosure is required only if necessary for a fair adjudication of the requesting party's claims or defenses.

■ We therefore hold that trial courts should apply Rule 507 as follows: First, the party resisting discovery must establish that the information is a trade secret. The burden then shifts to the requesting party to establish that the information is necessary for a fair adjudication of its claims. If the requesting party meets this burden, the trial court should ordinarily compel disclosure of the information, subject to an appropriate protective order.[3] In each circumstance, the trial court must weigh the degree of the requesting party's need for the information with the potential harm of disclosure to the resisting party.

## IV

Before applying Rule 507 to the facts of this case, we consider various arguments the parties and amicus curiae raise.

### A

Plaintiffs first argue that our decisions in *Jampole v. Touchy,* 673 S.W.2d 569 (Tex. 1984), and *Garcia v. Peeples,* 734 S.W.2d 343 (Tex.1987), require Continental to produce the skim-stock formula. In *Jampole,* a products liability defendant objected to producing its assembly diagrams and instructions, contending that the documents were trade secrets. *See* 673 S.W.2d at 574. After the trial court denied discovery, this Court granted conditional mandamus relief compelling production. The Court reasoned:

> Although a valid proprietary interest may justify denying or limiting discovery requested by a direct competitor, *Automatic Drilling Machines, Inc. v. Miller,* 515 S.W.2d 256 (Tex.1974), this is not such a case. Jampole is not [the defendant's] business competitor, and [the defendant] acknowledged that, if the documents were relevant, any proprietary interest could be safeguarded by a protective order. Under these circumstances, it was an abuse of discretion for the trial court to deny discovery of the assembly documents. We do not decide whether [the defendant] has

shown a sufficient proprietary interest to justify a protective order. We hold that discovery cannot be denied because of an asserted proprietary interest in the requested documents *when a protective order would sufficiently preserve that interest.*

*Id.* at 574–75 (emphasis supplied). According to plaintiffs, *Jampole* stands for the proposition that, in actions that are not between business competitors, the trial court should always require production of relevant trade secrets, subject to an appropriate protective order. *Cf. Federal Open Market Committee v. Merrill,* 443 U.S. 340, 362 n. 24, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) ("Actually, orders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel or to the parties." (citations omitted)). This approach, however, would render the Rule 507 privilege meaningless in noncompetitor cases. Notably, the Court in *Jampole* did not consider Rule 507's effect, presumably because the defendant acknowledged that "any proprietary interest could by safeguarded by a protective order." 673 S.W.2d at 574. *Jampole* thus cannot be read as limiting the privilege's scope.

*Garcia* likewise does not speak to the scope of Rule 507. The issue there was not whether trade secret documents should be produced, but rather the scope of the protective order accompanying the production. *See* 734 S.W.2d at 345. As in *Jampole,* the Court did not consider or apply Rule 507.

■ Next, plaintiffs argue that a party requesting trade secret documents in a products liability case must show only that the information is relevant to the suit. However, because relevance is the standard for discovery in general, *see* TEX.R. CIV. P. 166b(2)(a), this approach likewise would render Rule 507 meaningless. *See Bridgestone/Firestone,* 9 Cal.Rptr.2d at 712. Rule 507 clearly contem-

---

**3.** In this case, for example, the trial court limited access to the information to the parties in this lawsuit, their lawyers, consultants, investigators, experts and other necessary persons employed by counsel to assist in the preparation and trial of this case. Each person who is given access to the documents must agree in writing to keep the information confidential, and all documents must be returned to Continental at the conclusion of the case.

plates a heightened burden for obtaining trade secret information.

■ Finally, plaintiffs argue that because Continental originally sought the confidentiality order for the protection of other documents, Continental has implicitly conceded that the protective order will adequately protect the skim-stock formula as well. However, that Continental was willing to produce certain information under a protective order does not mean that Continental has waived its right to assert Rule 507 about other information which it may regard as more competitively sensitive or less necessary for the plaintiffs' case.

## B

Continental and amicus curiae Product Liability Advisory Council present three other arguments about why production is not required in this case.

■ Continental first argues that, in general, a protective order can never adequately protect a sensitive trade secret because there is always the risk that the receiving party will either deliberately or inadvertently disclose the information. For example, Continental argues that if Robert Ochs, the plaintiffs' expert witness, learns the skim-stock formula, he will be more in demand as an expert witness in other cases, creating incentive for him to disclose the formula. Continental appears to be arguing that the risk of disclosure justifies an absolute trade secret privilege. However, Rule 507 does not support such an approach. It requires production if necessary to prevent fraud or injustice. Of course, the trial court should consider any potential inadequacies of the protective order in weighing the competing interests of the parties under Rule 507. *See Bridgestone/Firestone,* 9 Cal.Rptr.2d at 713. This is especially true when the trial court has specific, fact-based grounds for believing

that trade secrets may be disclosed in violation of its protective order.

■ Continental next argues that Texas Rule of Civil Procedure 76a may render any protective order for trade secrets ineffective. That rule restricts the circumstances in which trial courts may seal court records, and applies to unfiled discovery "concerning matters that have a probable adverse effect upon the general public health or safety...." TEX.R. CIV. P. 76a(2)(c). Where a trial court has restricted the dissemination of discovery under a protective order, Rule 76a allows any person at any time to argue that the discovery falls within the above definition and therefore must be made public. *See* TEX.R. CIV. P. 76a(7); *General Tire, Inc. v. Kepple,* 970 S.W.2d 520 (Tex.1998). Continental argues that, if a trial court has determined that trade secrets are "necessary" to a plaintiff's personal injury case under Rule 507, it is likely that the court would also determine that they have a "probable adverse effect upon the general public health or safety" and therefore must be made public under Rule 76a. Thus, Continental argues, any protective order for the documents would be ineffective.

We disagree with Continental's premise that all discoverable trade secrets will likely constitute "court records" under Rule 76a. Moreover, even if a trade secret produced under a protective order is later determined to be a court record, this does not necessarily mean that the information must be made public. Rule 76a allows the information to remain sealed upon a showing that it meets the criteria specified in Rule 76a(1).[4] That a document contains trade secret information is a factor to be considered in applying this sealing standard. *See Eli Lilly & Co. v. Marshall,* 829 S.W.2d 157, 158 (Tex.1992).

4. Rule 76a(1) provides in pertinent part:
    No court order or opinion issued in the adjudication of a case may be sealed. Other court records, as defined in this rule, are presumed to be open to the general public and may be sealed only upon a showing of all of the following:
    (a) a specific, serious and substantial interest which clearly outweighs:

    (1) this presumption of openness;
    (2) any probable adverse effect that sealing will have upon the general public health or safety;
    (b) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted.
    TEX.R. CIV P. 76a(1).

Finally, the Product Liability Advisory Council argues that *Automatic Drilling Machines, Inc. v. Miller*, 515 S.W.2d 256 (Tex. 1974), controls this case. That case arose from a suit between direct competitors, in which one side sought discovery of the other side's trade secret documents. After the trial court ordered disclosure, this Court granted mandamus relief, holding that the trial court had abused its discretion. We reasoned:

> Trade secrets and confidential information are not necessarily "privileged" matters within the meaning of Rule 186a. If the information is material and necessary to the litigation and unavailable from any other source, a witness may be required to make disclosure. *Lehnhard v. Moore*, Tex. Sup., 401 S.W.2d 232. A public disclosure of trade secrets should not be required, however, except "in such cases and to such extent as may appear to be indispensable for the ascertainment of truth." 8 Wigmore, Evidence (McNaughton rev.1961), § 2212(3). In acting on the motions in this case, it was necessary for the judge to weigh the need for discovery against the desirability of preserving the secrecy of the material in question.

515 S.W.2d at 259. The trial court abused its discretion in compelling disclosure because there had been no showing that the information was "so essential to respondents' investigation and development of their case as to be subject to discovery by them." 515 S.W.2d at 260.

Although the Court decided *Automatic Drilling* before it promulgated Rule 507 in 1983, the decision is consistent with the rule. We recognized in *Automatic Drilling* that trade secrets should be disclosed only where the information is "material and necessary to the litigation and unavailable from any other source." 515 S.W.2d at 259. We further recognized that the trial court must balance the need for discovery against the need for nondisclosure. As discussed previously, this mirrors the proper approach under Rule 507.

## V

■ Accordingly, we reject the parties' alternative approaches. Instead, we apply our interpretation of Rule 507 to the facts of this case. Plaintiffs concede for purposes of this proceeding that the compound formula is a trade secret. The burden thus shifted to the plaintiffs to establish that the compound formula is necessary for a fair adjudication of this case. The only evidence that plaintiffs presented was deposition testimony from Continental's expert, Joseph Grant, that a compound that "doesn't have the right ingredients in it" could cause a belt separation. But Grant stated in his affidavit that the physical properties of a tire cannot be determined from an examination of a compound formula; rather, the finished tire itself must be tested. Further, plaintiffs do not contest Continental's assertions that the plaintiffs have no other manufacturers' compound formulas with which to compare Continental's formula. The plaintiffs contended at oral argument before this Court that their expert has found sulfur on the belt surfaces of this tire, and that plaintiffs need Continental's formula to determine whether sulfur is a regular component of the skim stock or whether it was a foreign material improperly introduced during manufacture. Regardless of whether this theory might otherwise justify discovery of the compound formula, an issue on which we express no opinion, plaintiffs presented no evidence supporting this theory to the trial court. Under these circumstances, given the highly proprietary nature of the information, the plaintiffs have not carried their burden under Rule 507 of demonstrating that the information is necessary for a fair trial.

We accordingly conclude that the trial court abused its discretion. Because the trial court has ordered Continental to produce privileged, trade secret information, Continental has no adequate remedy by appeal. *See Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992).

\* \* \* \* \*

For the foregoing reasons, we conditionally grant mandamus relief directing the trial court to vacate its order compelling Continental to produce the belt skim-stock formula. We reiterate that nothing in our decision prohibits plaintiffs from seeking to discover

the formula under the procedure we have set forth.

HANKINSON, J., did not participate in the decision.