IN RE DESA HEATING, L.L.C.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-088-CV

IN RE DESA HEATING, L.L.C. RELATOR

------------

ORIGINAL PROCEEDING

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Relator DESA Heating, L.L.C. seeks mandamus relief from the trial court’s order compelling it to produce information that it claims is protected by trade secret privilege.  Because we hold that the trial court abused its discretion by ordering production of DESA’s financial information and market strategies, we conditionally grant DESA’s petition for writ of mandamus as to this information only; in all other respects, we deny the petition.

FACTUAL BACKGROUND

DESA, a manufacturer and distributor of fireplace mantels, signed a contract in early 2003 
with Lowe’s hardware stores agreeing to provide Lowe’s with a variety of fireplace mantels.  DESA then placed an order with real party in interest Heartland USA, L.L.C. for 
six million dollars’ worth of fireplace mantels.  After their business relationship soured, 
DESA and Heartland were named as co-defendants in a lawsuit filed by KBK Financial, Inc., a company that provided financing to Heartland.  DESA and Heartland then filed cross-claims against each other in this suit; DESA alleges that Heartland failed to produce the quality and quantity of mantels as promised, and Heartland alleges that DESA wrongfully diverted its mantel business away from Heartland and interfered with its business relationship with KBK Financial.

In the course of this lawsuit, 
Heartland served discovery requests, including a request for production of documents and a corporate representative deposition notice, on DESA.  
DESA claimed that five of Heartland’s requests for production and eight of Heartland’s deposition topics sought information protected by trade secret privilege, and it tendered 
an affidavit of Scott M. Nehm, its Vice President of Distribution and Logistics, in support.  Heartland then filed a motion to compel DESA to respond to its discovery requests.  In response, DESA argued that the requested information was privileged but asked the trial court to enter a protective order should it rule that Heartland was entitled to discover the information.  The visiting trial court judge granted Heartland’s motion to compel and ordered DESA to respond to the discovery requests, but it did not enter the protective order requested by DESA.  DESA now seeks a writ of mandamus from this court ordering the trial court to set aside its order granting Heartland’s motion to compel.

DISCUSSION

When trade secret privilege is asserted as the basis for resisting production, the party resisting discovery must first establish that the information is a trade secret.  
In re Cont’l Gen. Tire, Inc.
, 979 S.W.2d 609, 613 (Tex. 1998) (orig. proceeding).  
The burden then shifts to the requesting party to establish that the information is necessary for a fair adjudication of its claims.  
Id.  
If the requesting party meets this burden, the trial court should ordinarily compel disclosure of the information, subject to an appropriate protective order.  
Id.
  

Mandamus will issue to correct a discovery order only if the order constitutes a clear abuse of discretion and there is no adequate remedy by appeal.  
In re Colonial Pipeline Co
., 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding)
; 
Walker v. Packer
, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding)
.  
The trial court abuses its discretion if it orders production once trade secret status is proven but the party seeking production has not shown a necessity for the requested materials.  
In re Bass
, 113 S.W.3d 735, 738 (Tex. 2003) (orig. proceeding).

A. 
Is the requested information a trade secret?

A trade secret is “any formula, pattern, device or compilation of information which is used in one’s business and presents an opportunity to obtain an advantage over competitors who do not know or use it.”  
Computer Assocs. Intern., Inc. v. Altai
, 
Inc
., 918 S.W.2d 453, 455 (Tex. 1994).
(footnote: 2)  DESA provided Nehm’s affidavit to establish the applicability of this privilege to the information sought by Heartland.  The discovery requests seek information from four general categories: financial information, market strategies, customers and vendors, and contract terms.
(footnote: 3)  The majority of Nehm’s affidavit discusses how DESA keeps this information secret and how it is often required to do so by terms of various contracts that it has with customers and vendors, but secrecy is not the only requirement of trade secret status.  To prevail in its claim of privilege, DESA also should show the value of the information to DESA and its competitors, 
see Bass
, 113 S.W.2d at 739, or how the information “
presents an opportunity to obtain an advantage 
over competitors,” 
Computer Assocs.
, 918 S.W.2d at 455 (emphasis added).
  After examining each discovery request and Nehm’s affidavit supporting DESA’s assertion of the trade secret privilege, we conclude that 
DESA has established the applicability of trade secret privilege to information regarding financial information and market strategies, but not to information regarding customers and vendors or contract terms.

Financial information
: Nehm’s affidavit asserts that, should DESA’s financial information be released to the public, its customers and vendors could use the information to renegotiate their prices with DESA, and its competitors could use the information to “undercut DESA in its pricing in an effort to obtain DESA’s customers.”  We hold that these statements, while somewhat conclusory and lacking in detail, are nevertheless sufficient to establish the competitive value of the information to DESA’s pricing strategy.  
See In re Cayman Island Firm of Deloitte & Touche
, No. 04-01-00491-CV, 2001 WL 1042233, at *4 (Tex. App.—San Antonio September 12, 2001, orig. proceeding) (not designated for publication) (holding affiant’s statement that information was “highly confidential and proprietary and would greatly benefit [relator’s] competitors,” while “sketchy” on details, was sufficient to establish trade secret privilege).  Accordingly, DESA has carried its initial burden of establishing that this information is a trade secret.  
See Cont’l Gen. Tire
, 
979 S.W.2d at 613.

Market strategies
: Nehm’s affidavit asserts the same reasons for the value of market analyses, assessments, and so forth prepared by DESA, claiming that public release of the information would be “detrimental” and could assist its vendors and competitors in undercutting DESA’s pricing.  Again, these statements establish that the market analyses provide DESA with pricing strategies that, if they were revealed to competitors, would cause DESA to lose its marketplace advantage.  Therefore, we conclude that DESA has carried its initial burden as to market strategies as well.  
See id.

Customers and vendors
: In contrast to the statements in Nehm’s affidavit regarding financial information and market strategies, the affidavit does not address any competitive advantage provided by DESA’s customer and vendor lists.  Instead, the affidavit states merely that revealing the identity and contact information of its customers and vendors “would put DESA’s competitors in direct contact with DESA’s customers (buyers) and vendors (manufacturers)” and that “DESA spends many man hours in maintaining a good relationship with their customers (buyers) and vendors (manufacturers).”  It does not state why the identity and contact information is important to DESA or why the information gives it a competitive advantage, and it does not state that revealing this information would hurt its business or its relationships.
(footnote: 4)  
For these reasons, we conclude that DESA did not establish the applicability of trade secret privilege to the discovery requests seeking customer and vendor information; therefore, the trial court did not abuse its discretion by ordering the production of the requested discovery relating to DESA’s customers and vendors.

Contract terms
: For the same reason, we hold that DESA did not meet its burden of showing that the terms of its contract with Lowe’s are entitled to trade secret protection.  Nehm’s affidavit states only that the information is confidential and proprietary, not that it has competitive value for the company.  While Nehm’s affidavit states that the contract contains a confidentiality provision, this establishes only the confidentiality of the information—not that it is a trade secret.  Accordingly, we do not find a clear abuse of discretion as to the trial court’s compelling discovery of the terms of DESA’s contract with Lowe’s.

B.
 Did Heartland establish that the information was necessary for a fair adjudication of its claims?

Because DESA established the applicability of trade secret privilege to the financial information and market strategies sought by Heartland, the burden shifted to Heartland to show that disclosure of the information was necessary for a fair adjudication of its claims.  
See Cont’l Gen. Tire
, 979 S.W.2d at 613.  However, the trial court had no evidence before it of Heartland’s need for the information.  The trial court merely had Heartland’s explanation, “To show that its claim for lost profits is not speculative, Heartland intends to show the Court that DESA projected Heartland’s profits and that DESA continues to sell the products to Lowe’s which DESA promised to purchase from Heartland,” and Heartland’s unsupported contention that “the information is material and necessary to prove Heartland’s lost profits and is unavailable from another source.”  Heartland’s motion to compel provided no explanation as to why revealing DESA’s trade secrets was necessary to proving its claims.
(footnote: 5)  
See Cont’l Gen. Tire
, 979 S.W.2d at 615 (holding that, without evidence of necessity, requesting party did not carry its burden for compelling disclosure of trade secret).  Accordingly, we hold that the trial court abused its discretion when it compelled production of DESA’s trade secrets without a showing of necessity by Heartland.
(footnote: 6)  And because DESA has no adequate remedy by appeal, mandamus relief is appropriate.  
See id.
 (holding that appeal was an inadequate remedy when requesting party failed to establish necessity, yet the trial court nevertheless compelled production of trade secrets) (citing 
Walker
, 827 S.W.2d at 843).

CONCLUSION

Having concluded that the trial court abused its discretion by compelling production of DESA’s trade secret financial information and market strategies, we conditionally grant DESA’s petition for writ of mandamus only to the extent that we order the trial court, in accordance with this opinion,
 to vacate its February 21, 2006 order with respect to 
numbers 9-13 of Heartland’s First Request for Production and numbers 12-13, 17, and 21-22 of Heartland’s Notice of Intent To Take the Oral/Videotaped Deposition Duces Tecum of a DESA Corporate Representative
.  
A writ will issue only if the trial court fails to do so.  In all other respects, DESA’s petition for writ of mandamus is denied.

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DELIVERED: June 22, 2006

APPENDIX A

HEARTLAND’S FIRST REQUEST FOR PRODUCTION:

REQUEST FOR PRODUCTION NO. 9:
  Other than Heartland, produce all financial information including copies of purchase orders, profit projections, payments made to any mantel manufacturer selling products to DESA from April 2003 until the present.

REQUEST FOR PRODUCTION NO. 10:
 
  Produce all financial information showing DESA’s gross profit from the mantel business from its calendar business years for 2001 through the present.

REQUEST FOR PRODUCTION NO. 11:
  
Produce all financial information showing DESA’s net profit form the mantel business from its calendar business years for 2001 through the present.

REQUEST FOR PRODUCTION NO. 12:
  Produce any studies, analyses, assessments, and/or forecasts by DESA for the mantel business for its calendar business years from 2001 through the present.

REQUEST FOR PRODUCTION NO. 13:
  Produce the revenues, earnings, profits, losses, or billings relating to and/or derived form DESA’s mantel business from its calendar business years for 2001 through the present.

HEARTLAND’S NOTICE OF INTENT TO TAKE THE ORAL/VIDEOTAPED DEPOSITION DUCES TECUM OF A DESA CORPORATE REPRESENTATIVE:

8. The terms of DESA’s contract(s) with Lowe’s to purchase mantels manufactured by Heartland, including the number of mantels to be supplied by DESA to Lowe’s.

12. Sales of mantels by DESA to buyers, such as Lowe’s, since DESA discontinued its relationship with Heartland, includes the gross amount of such sales by year.

13. The percentage of gross profit DESA has derived from the mantel business in relation to its total gross profit for the company for each year from 2001 to present.

14. The purchase by DESA of mantels from all suppliers after DESA discontinued purchasing from Heartland until present, including the names, addresses, phone numbers and contact persons for the suppliers and whether or not such supplier is an affiliate of DESA.

16. Identify the buyers of mantels from DESA from the beginning of Heartland’s relationship with DESA until the present time, including DESA’s primary contact person with each buyer.

17. DESA’s gross sales in dollars of products, other than mantels, to buyers which sales were obtained by DESA as a result of DESA’s sales of mantels designed by Heartland (or modifications thereof) from 2001 to present.

21. DESA’s gross and net profit from selling mantels for each year form 2001 to present.

22. Projections prepared by DESA for the mantel business for each year from 2001 to present.

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Also see 
In re Bass
, which approves the following Restatement factors for evaluating a claim of trade secret privilege: 

(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

113 S.W.3d at 739 (citing 
Restatement of Torts 
§ 757 cmt. B (1939)).

3:
The specific requests corresponding to the categories are as follows: Financial information (requests for production numbers 9-11, 13; deposition notice numbers 12-13, 17, 21-22); market strategies (requests for production numbers  9, 12; deposition notice number 22); customers and vendors (deposition notice numbers 14, 16); and contract terms (deposition notice number 8).  These discovery requests are reproduced at Appendix A to this opinion.

4:
Cf. T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.
, 965 S.W.2d 18, 23 (Tex. App.—Houston [1st Dist.] 1998, pet. dism’d) (holding that vendor list was a trade secret when resisting party testified that “it [had] taken him four years to compile a list of vendors he considers capable of providing the materials and service he needs, who have the best prices, and who are the most reliable”); 
Miller Paper Co. v. Roberts Paper Co.
, 901 S.W.2d 593, 601-02 (Tex. App.—Amarillo 1995, no writ) (concluding that customer list was trade secret when evidence showed that it had been compiled over a 52-year period and that it contained contact information as well as customers’ buying preferences, special billing information, delivery sites, information regarding the need for purchase orders, and cash on delivery data; witnesses also testified that the information “would provide competitors tremendous advantage” and that “with the data, one could easily start a new company”).  

5:
In this original proceeding, Heartland contends that its expert’s testimony (which was not before the trial court) establishes necessity because “the information solicited will be used to supplement his opinions concerning the amount of Heartland’s damages.”  To the contrary, the expert did not state that he needed the information to formulate his damages calculations; he merely said that, when asked if he planned to supplement his report, “[i]t depends upon what other information comes to me as a result of interrogatories and future depositions.”

6:
Specifically, the trial court abused its discretion by ordering DESA to respond to numbers 9-13 of Heartland’s First Request for Production and numbers 12-13, 17, and 21-22 of Heartland’s Notice of Intent To Take the Oral/Videotaped Deposition Duces Tecum of a DESA Corporate Representative.