In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-06-519 CV
 

______________________



IN RE UNIVERSAL COIN & BULLION, LTD.






Original Proceeding






OPINION



 In this mandamus proceeding, Universal Coin & Bullion, Ltd. requests relief from a
pretrial discovery order in UCB's underlying lawsuit against Jerry Jordan. The central issue
is the appropriateness of the trial court's order compelling production of trade secrets. 

 Mandamus relief is appropriate when a trial court abuses its discretion, and there is
no adequate remedy by appeal. Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). The
party resisting discovery has the burden to establish both requirements. In re CSX Corp., 124
S.W.3d 149, 151 (Tex. 2003). The trial court abuses its discretion when it orders discovery
exceeding the scope permitted by the rules of procedure. Id. at 152. No adequate remedy
by appeal is available when a trial court erroneously compels production of trade secrets
without a showing of necessity. In re Bass, 113 S.W.3d 735, 745 (Tex. 2003). We
conditionally grant the writ. 

 UCB sells coins to dealers and the general public, and it employs sales personnel for
that purpose. The company sued attorney Bill Voss, newspaper reporter Jerry Jordan, and
two former UCB employees. Allegedly, Voss and Jordan acted in concert with John Rollins
and Shannon Smith, the former employees, to unlawfully use the company's confidential
information regarding current and former UCB customers. The company alleged Voss and
Jordan used the confidential and proprietary information to write letters to UCB customers. 
The pleadings asserted the following causes of action: conspiracy to misappropriate
confidential information and trade secrets; conspiracy to violate the Texas Theft Liability
Act; and conspiracy to commit tortious interference with contract. (1) 

 UCB filed written objections to the production requests filed by Rollins and Smith,
a motion for protection from discovery, and a motion for protective order. In the fifty-seven
responses at issue, UCB asserted the trade secret privilege and objected that many of the
requests were overly broad and not reasonably calculated to lead to discoverable evidence. 
The trial court held an evidentiary hearing on UCB's protection motions. Jordan's attorney
was present at the hearing. Subsequently, Jordan filed a notice of adoption of Rollins' and
Smith's Requests for Production. UCB then filed a motion asserting that the discovery issues
underlying the discovery hearing were moot, because after settlement the only party
remaining in the lawsuit was Jordan. 

 The trial court nevertheless signed an order that granted UCB's claims of "trade
secrets" to four of the requests for production "subject to being requested by Jordan, should
that be necessary for his defense." The trial court denied UCB's trade-secret-privilege
assertion as to the remaining fifty-three requests. Seven pages of the trial court's narrative
are labeled "Findings of the Court From the [Discovery Hearing]." The order describes the
parties' claims and makes findings related to them. In a separate section labeled "Orders of
the Court[,]" the trial court concludes there is sufficient evidence that a trier of fact could
believe the fraud allegations against UCB. (2) The order states, however, that UCB announced
the claims by and against UCB involving the other parties had settled, "but UCB's claims
against Jerry Jordan have not been settled." 

 A requesting party must establish that a trade secret disclosure would be relevant to
a claim or defense in the action. See generally In re Bridgestone/Firestone, Inc.,106 S.W.3d
730, 732-734 (Tex. 2003). Discovery requests that are overly broad and seek irrelevant
information are not permissible. In re CSX Corp., 124 S.W.3d at 152. Jordan argues
U.C.B.'s objections, other than the trade secret privilege, have not been presented to the trial
court. Both parties acknowledged to the trial court that issues other than the trade secret
matter were not before the trial court. (3) We have reviewed the record of the hearings and
conclude the trial judge was not presented with UCB's previously-filed relevance or
overbreadth objections. The trial court's order does not expressly address those separate
objections. We do not consider those issues at this time, except to the extent a trade secret
disclosure ruling requires a showing of relevance.

 UCB argues the trial court abused its discretion when it ruled UCB must disclose
confidential and trade secret information. (4) Jordan responds that the petition is premature
because "[n]o production has been compelled." In addition to overruling most of the trade
secret objections, however, the order provides in part:

 IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the
Court grants a 30-day stay from the time of the entry of this order for the
production of portions of UCB's customer list and UCB's complete customer
list, but there is no stay in regard to the other production requests propounded
on UCB. (emphasis added)


The trade secret issue is properly before this Court. 

 "A trade secret is any formula, pattern, device or compilation of information which
is used in one's business and presents an opportunity to obtain an advantage over competitors
who do not know or use it." Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455
(Tex. 1996). Under Rule 507 of the Texas Rules of Evidence, the "party asserting a trade
secret privilege has the burden of proving that the discovery information sought qualifies as
a trade secret." In re Bass, 113 S.W.3d at 737; see also In re CI Host, Inc., 92 S.W.3d 514,
516 (Tex. 2002) (A party asserting a privilege or making an objection must present any
evidence necessary to support the privilege or objection.) (citing Tex. R. Civ. P. 193.4(a)). 
If met, the burden shifts to the party seeking the trade secret disclosure to establish that the
information is necessary for a fair adjudication of a claim or defense in the litigation. See In
re Cont'l Gen. Tire, Inc., 979 S.W.2d 609, 612-13 (Tex. 1998). 

 At the hearing on UCB's motions, UCB proved its customer list and customer contact
information are trade secrets that UCB protects. In his mandamus response, Jordan contends
he stated on the record "UCB's Customer List is no longer being requested[,]" and under the
written order he "is not entitled to the customer list unless he makes a further request and
carries his burden to show that it is 'necessary to his defense.'" The trial court found
Requests 7, 14, 62, and 63, which relate to UCB's customer list, qualify as trade secrets. As
to the fifty-three other requests, however, the trial court denied UCB's assertion of the trade
secret privilege. To the extent that any of the fifty-three requests involve customer list and
identity information, they request the same information determined by the trial court to be
trade secrets. While the trial court's order purports at one point to protect the trade secrets
absent a showing of necessity by Jordan, the order nevertheless overrules most of the trade
secret objections and grants only a 30-day stay "for the production of portions of UCB's
customer list and UCB's complete customer list[.]"

 UCB contends the trial court's legal conclusion -- that evidence of fraud prevents
UCB's claim of trade secrets -- is a misstatement of the law, and the October 19, 2006, order
must be set aside. Rule 507 protects trade secrets "if the allowance of the privilege will not
tend to conceal fraud or otherwise work injustice." Tex. R. Evid. 507. "Stated alternatively,
disclosure is required only if necessary for a fair adjudication of the requesting party's claims
or defenses." In re Cont'l Gen. Tire, Inc., 979 S.W.2d at 612. The Supreme Court explained
in Continental General Tire that the trade secret privilege seeks to accommodate two
competing interests. "First, it recognizes that trade secrets are an important property interest,
worthy of protection. Second, it recognizes the importance we place on fair adjudication of
lawsuits." Id. The Supreme Court's interpretation of Rule 507 requires that "[i]n each
circumstance, the trial court must weigh the degree of the requesting party's need for the
information with the potential harm of disclosure to the resisting party." Id. at 613. The rule
is intended to prevent fraud or injustice to the requesting party that may be occasioned by the
nondisclosure of a trade secret, and permits disclosure if necessary for a fair adjudication of
the requesting party's claims or defenses. 

 As the Supreme Court explained in In re Bridgestone/Firestone, Inc., 106 S.W.3d at
733, "[A] party seeking [trade secret] information cannot merely assert unfairness but must
demonstrate with specificity exactly how the lack of the information will impair the
presentation of the case on the merits to the point that an unjust result is a real, rather than
a merely possible, threat." Under the Supreme Court's interpretation of Rule 507, if the
disclosure is not necessary for a fair adjudication of the claim in the litigation, the trial court
should not order disclosure of the trade secret. Here, UCB established the trade secret
privilege. The burden then shifted to Jordan to show the information is "necessary or
essential" for a fair adjudication of his defense before the production is required. See In re
Bridgestone/Firestone, Inc. 106 S.W.3d at 731; see also In re Cont'l Gen. Tire, Inc., 979
S.W.2d at 613. The trial court's order in this case acknowledges this "necessary"
requirement, but compels production while deferring a determination of necessity. 

 For disclosure of a trade secret to be necessary in a case, the trade secret must be
relevant, though relevance alone is insufficient. See In re Leviton Mfg. Co., 1 S.W.3d 898,
902 (Tex. App.--Waco 1999, no pet.). In its written order, the trial court found there was
evidence of fraud; however, the allegation of fraud set out in the order relates to individual
sales representatives' conduct toward customers, not to the effect of nondisclosure on any
claim against Jordan or defense asserted by Jordan in this litigation. Furthermore, the fraud
findings of the court apparently relate to allegations in pleadings in litigation previously
announced as settled. (5) 

 Jordan argues the petition is premature on the issue of fraud, "because there has been
no finding that fraud overcomes the assertion of the alleged trade secrets as to Mr. Jordan or
requires production of any trade secret to Mr. Jordan." Nevertheless, the order denies trade
secret protection to the fifty-three requests and compels production of information relating
to the customer list and other trade secrets. Jordan had the burden to demonstrate with
specificity exactly how nondisclosure of the trade secret information would impair the
presentation of his defense in the remaining litigation. See In re Bridgestone /Firestone, 106
S.W.3d at 733. He did not show why the trade secret information requested is necessary to
defend the claim against him. 

 UCB contends the trial court's order allowing all litigants in other lawsuits involving
UCB to share information obtained in formal discovery from UCB, "which UCB designates
as 'Confidential,'" but "subject to the [trial court's] protection order . . . ," is overly broad. (6) 
In Garcia v. Peeples, 734 S.W.2d 343, 347 (Tex. 1987), the Supreme Court stated that
"[s]hared discovery is an effective means to insure full and fair disclosure." The Court stated
that the "public policies favoring shared information require that any protective order be
carefully tailored to protect [a party's] proprietary interests while allowing an exchange of
discovered documents." Id. at 348. Unlike Garcia, no protective order has been entered
here, though the trial court's order clearly contemplated one and makes provision for UCB's
designating those documents it produces as "confidential." Further, the Court in Garcia
explained that "[p]arties subject to a number of suits concerning the same subject matter are
forced to be consistent in their responses by the knowledge that their opponents can compare
those responses." Id. at 347 (emphasis added). Here, the order does not narrowly tailor the
"sharing" of discovery to protect trade secrets, and it does not restrict sharing to "similarly
situated parties" or to suits involving the same subject matter. See id.; see also Steenbergen
v. Ford Mtr. Co., 814 S.W.2d 755, 758 (Tex. App.--Dallas 1991, writ denied). The record
does not show the contemplated protective order has been entered. (7)
 

 The trial court's rulings granting and overruling the trade secret objections are
inconsistent. What is at least temporarily protected by the trade secret privilege in response
to some requests is not protected by the order in response to others. We need not reach the
issue of which discovery requests should be stricken at this time. The procedure the trial
court used in addressing the trade secret issue was a clear abuse of discretion. The trial court
erred in compelling production of trade secret information with no showing that trade secret
disclosure is necessary in the remaining litigation. The order apparently is based in part on
pleadings or discovery requests in claims announced settled. A trial court "must weigh the
degree of the requesting party's need for the information with the potential harm of
disclosure to the resisting party." In re Cont'l Gen. Tire, Inc., 979 S.W.2d at 613. The trial
court did not make a "necessity" determination. Even if disclosure of some trade secrets is
necessary, the trial court has not signed a protective order and has not employed other
protective techniques sufficient to prevent disclosure beyond that which is necessary to a fair
adjudication of the facts of this case. 

 The trial court is ordered to vacate its October 19, 2006, order, and to conduct further
proceedings consistent with this Opinion. We are confident the trial court will comply. 
Mandamus will issue only if the trial court does not.

 WRIT OF MANDAMUS CONDITIONALLY GRANTED.

 PER CURIAM


Submitted on December 8, 2006

Opinion Delivered March 15, 2007 


Before McKeithen, C.J., Gaultney and Kreger, J.J.
1. UCB also included in its petition an application for injunctive relief against Jordan. 

2. The court also found UCB did not present any evidence on its trade secret assertion
regarding production of the names of media used for advertising. The trial court decreed that
"all current and/or former UCB customers who have ever made a complaint of any kind
against UCB are not privileged." The order declared that all information obtained outside
of the discovery process would not be protected by a protective order and "cannot be made
confidential by any of the parties." The order also found waiver by virtue of UCB's alleged
sharing of information with other companies. The real party in interest does not argue waiver
as to the customer list in its response brief, and the upholding of the trade secret objection
to the four requests seems inconsistent with a finding of waiver. In any event, we do not find
the evidence presented at the hearing sufficient to establish a waiver of the trade secret
privilege in this litigation.
3. At the August 31, 2006, hearing, UCB's attorney stated the hearing's focus was on
the customer list and its disclosure. 
4. The trial court granted UCB's assertions of trade secret privilege in four of the fifty-seven requests. 
5. The court's order states, "Since the hearing, UCB announced in open court that its
claims against John Rollins, Shannon Smith, and Bill Voss have been settled, but UCB's
claims against Jerry Jordan have not been settled. Also, UCB announced in open court that
the claims of Roxanne Charnock have been settled." 
6. In its "Statement of Facts," UCB states "[T]his case is really about whether attorneys
may entice former employees of a company to divulge stolen trade secrets (confidential
customer list and contact information) to those attorneys and entice a reporter to steal trade
secrets (customer lists) so they may solicit potential clients for a multi-party lawsuit or
possible class action lawsuit." Jordan responds that "[t]his is illogical, because the only
evidence cited for this bold accusation implicates only Mr. Voss . . . with whom UCB claims
it settled." Jordan argues there is no evidence he is soliciting clients, and the "accusation is
a transparent canard[.]" 
7. UCB also contends that the trial court's order stating that "all information . . . 
obtained outside of the discovery process is not protected by this protective order, and cannot
be made confidential by any of the parties" is overly broad. Essentially, UCB's pleadings
allege certain confidential information was obtained improperly and request an injunction
against Jordan's use of the confidential information. Jordan argues an injunction would be
unconstitutional. Because the order states broadly that information obtained outside of the
discovery process is not protected, the discovery order essentially comments on the
availability of injunctive relief against a party alleged to have misappropriated trade secret
information. The merits of the litigation generally are not the proper subject of a discovery
order, however, and to the extent it rules on the merits, the order exceeds its purpose. We
do not reach the merits of the litigation in this mandamus proceeding.