NO. 07-07-0437-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



FEBRUARY 15, 2008



______________________________




RICHARD W. DEMPS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2005-410,574; HONORABLE CECIL G. PURYEAR, JUDGE



_______________________________



Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

 ABATEMENT AND REMAND


 Following a plea of not guilty, Appellant, Richard W. Demps, was convicted by a jury
of sexual assault and sentenced to life imprisonment. Appellant timely filed a notice of
appeal challenging his conviction. The clerk's record filed on February 11, 2008, contains
the Trial Court's Certification of Defendant's Right of Appeal. The form, however, is not
signed by Appellant as required by Rule 25.2(d) of the Texas Rules of Appellate
Procedure. (1)

 Consequently, we abate this appeal and remand the cause to the trial court for
further proceedings. Upon remand, the trial court shall utilize whatever means necessary
to secure a Certification of Defendant's Right of Appeal in compliance with Rule 25.2(d). 
Once properly executed, the certification shall be included in a supplemental clerk's record
and filed with this Court on or before March 4, 2008.

 It is so ordered.

 Per Curiam

Do not publish.
1. Rule 25.2(d) was amended to require that a defendant sign the certification and
receive a copy. The amendment became effective September 1, 2007.



controversy were or
are indeed such secrets. 

 Applicable Law

 To be entitled to a writ of mandamus, there must be proof that the trial court clearly
abused its discretion or violated a duty imposed by law and that review through appeal is
inadequate. Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). Furthermore, if the
documents involve trade secrets and it is determined that the trial court abused its
discretion in requiring their disclosure, then mandamus is appropriate for the wrong is not
susceptible to correction through appeal. In re Bass, 113 S.W.3d 735, 745 (Tex. 2003). 

 Next, whether the trial court abused its discretion in compelling the discovery of
trade secrets depends on whether the party seeking the information established that it was
necessary for a fair adjudication of its claim or defense. In re Continental General Tire,
Inc., 979 S.W.2d 609, 613 (Tex. 1998). In turn, "necessity depends upon whether the
[data] . . . is material and necessary to the litigation.'" In re Bass, 113 S.W.3d at 743,
quoting In re Continental General Tire, Inc., 979 S.W.2d 609 (Tex. 1998). It is not enough
to simply state that the information is necessary. Nor do general assertions of unfairness
suffice. In re Bridgestone/Firestone, Inc., 106 S.W.3d 730, 732-33 (Tex. 2003). On the
contrary, the party seeking disclosure "must demonstrate with specificity exactly how the
lack of the information will impair the presentation of the case on the merits to the point that
an unjust result is a real, rather than a merely possible, threat." Id. In other words, the
litigant must satisfy the test through the presentation of competent evidence. If it does not,
then compelling disclosure amounts to an instance of abused discretion warranting
mandamus relief. See e.g., id. at 734 (so recognizing); In re Continental General Tire, Inc.,
979 S.W.2d at 615 (so recognizing).

 Application of Law

 Again, because neither party disputed that the discovery in question comprised
trade secrets, we do not address that matter. Instead, we turn our attention to whether the
Appraisal District met the test described in Bass, Bridgestone, and Continental. 

 According to the record before us, the discovery was allegedly sought to facilitate
the valuation of the McKee refinery. Such a valuation could occur through several ways,
according to the Appraisal District's expert and sole witness. They include both the income
or cost approaches. And, when asked by the District if the information in general was
"necessary," its expert generally said "[y]es." Yet, why it was went unexplained, save for
two instances. Those two instances concerned information about 1) the refinery's
workforce and union contracts and 2) Diamond Shamrock's acquisition of other refineries
located outside Moore County. 

 With regard to the union contracts and workforce data, the expert concluded that
such information when "using the income approach" would "serve to help make . . .
adjustments" for "certain intangibles." Yet, at no time did he suggest that he could not
complete his appraisal without the information. Nor did he discuss how withholding the
information from him would hamper his task in any way. Instead, he simply said that
having the data would "help." 

 Concerning the matter of other refineries acquired by Diamond Shamrock, the
expert opined that the "information would be used to develop the comparable sales
approach" and that "[i]t's always necessary to have good information about the comparable
sales in order to apply them." Previously though, he had told the trial court that "buyers
and sellers both look to the income approach for establishing value." So too did he later
admit that he also used the cost approach. Given their different names, one could possibly
assume that the income, cost, and comparable sales approaches all differed in some way. 
Whether they do, however, went undeveloped. And, with the exception of the broad and
conclusory statements cited, the expert gave no explanation of why the trade secret
information was necessary to his calculation under any valuation method. Nor were we
told how the value of realty sold miles from Moore County has any relevance, much less
is necessary, to the valuation of realty within Moore County. It went unexplained. 

 Also of note is the evidence illustrating that the District already had appraised the
McKee refinery during the years in question. Arguably, there existed data upon which
those appraisals were founded for surely an appraisal district would not calculate values
from whole cloth. Yet, the District's expert and sole witness conceded that the District had
not provided that information to him. Given this, any suggestion that the previously
undisclosed trade secrets of Diamond Shamrock were necessary to complete an appraisal
is dubious. Until the extent of that other data, if any, is perused by the expert (and
revealed to the court for assessment), it cannot be determined how withholding the trade
secrets will impair the District's case on the merits. 

 In short, the record before us lacks evidence "demonstrat[ing] with specificity" that
the risk of an "unjust result" is "real" if the trade secrets of Diamond Shamrock remain
secret. The District failed to prove necessity as required by Bass, Firestone, and
Continental. And, the conclusory statements of the District's expert to the contrary do not
fill the gap. See Coastal Transp. Co. v. Crown Cent. Petroleum, 136 S.W.3d 227, 232
(Tex. 2004) (holding that conclusory statements are not evidence). Accordingly, we
conditionally grant mandamus relief directing the trial court to vacate its June 21, 2006
"Order to Compel." We are confident that it will comply and will issue a writ of mandamus
only if does not. Finally, our stay of the trial court's directive will remain in effect until the
June 21st order is vacated. 

 

 Brian Quinn 

 Chief Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon 2005). 
2. The trial court ordered that Diamond Shamrock respond fully and completely to Requests for
Production Nos. 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31,
32, 33, 34, 35, 36, 37, 38, 40, 41, 42, and 43.