[L. A. No. 16310. In Bank.—October 11, 1937.]

CITY OF LOS ANGELES (a Municipal Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and DON CHRISTENSEN, a Minor, etc., Respondents.

Ray L. Chesebro, City Attorney, Frederick Von Schrader, Assistant City Attorney and Bourke Jones, Deputy City Attorney, for Petitioner.

Everett A. Corten and Eldon B. Spofford for Respondent Industrial Accident Commission.

THE COURT.—This is a proceeding on behalf of the City of Los Angeles to have reviewed an order of the Industrial Accident Commission awarding compensation.

In 1935 the City of Los Angeles became co-sponsor of a Federal Works Progress Administration project whereby roads and firebreaks were to be constructed in the Santa Monica mountains to facilitate the moving of vehicles and fire extinguishing apparatus into this area, with a view to minimizing the hazard of brush fires in that locality. Under the plans for the project the federal government advanced about ninety-four per cent of the moneys needed therefor, the city advancing the other six per cent. It was the understanding between the city and the government that the city should draw up the plans and specifications for the work, subject, however, to the approval of the federal government. After the plans were drawn up and approved it was found that a gasoline power shovel would be needed in connection with the work. The government accepted bids for this contract and awarded the same to Mrs. Jeanne Robare, the owner of the shovel here involved. Under her contract Mrs. Robare was to receive a stipulated sum of money monthly, to be paid by the federal government for the use of her shovel. She was to furnish the men needed to operate the shovel and to fix and pay for their services. This contract provided further that the workmen on the shovel were to become the employees of Mrs. Robare and not of the federal government. She was also required to procure and maintain compensation insurance covering the men employed in the operation of the shovel.

During the course of the work the oiler, one of the two men comprising the shovel crew, suffered injuries arising out of and in the scope of his employment which resulted in the amputation of one of his legs. The owner of the shovel, the federal government and the city were joined as defendants. At the hearing, the action was dismissed as to the federal

government upon the grounds that the commission had no jurisdiction over such body. The owner of the shovel and the city being·the two remaining defendants, the award was made against the owner as general employer and against the city as special employer. The owner of the shovel did not procure insurance on the men employed by her in accordance with her contract. However, she is financially responsible, has admitted her liability, and therefore it is not under review herein.

The question presented is: Was the municipality, acting as co-sponsor of a Works Progress Administration project, liable under the Workmen's Compensation Act for injuries to an employee of a contractor doing work on such project under a contract with the federal government?

The award against the city as special employer was made, it appears, because the city, through its engineers, exercised a certain amount of supervision over the work on the project, including the shovel, in order to see that the work conformed to specifications, and for the further reason that the project was for the immediate benefit of the city.

The city contends that there was no contract of employment, either express or implied, between the injured and the city; that the work was being performed by and for the federal government under its relief program and not for the benefit of the city; and that none of the elements necessary to charge it as a special employer were present.

The record discloses these additional facts: the work on the project was divided into twenty-two "spots" or locations. The particular location upon which the shovel was used herein was known as project number 524. The injured employee was a minor, who was not at the time of the accident and never had been, a relief worker. At the time of the accident there were approximately 950 men employed on the project. These men were relief workers, paid by the federal government, except a very small percentage. Of this latter number the city had on the project a superintendent, Mr. Allen, and about twenty-two foremen. Mr. Ketring, one of these foremen, was in charge of the excavation work of the shovel at the time of the injury to the oiler. The federal government had on the location a project superintendent, Mr. Clow, who it is shown by the evidence, was highest in authority among the men on the project, both city and federal, and who alone had the power to discharge

or remove an employee found to be undesirable, from the work. Mr. Clow authorized the hiring of the injured person herein, after the work had started and it was ascertained that an oiler was needed in the operation of the shovel. The federal government supplied, among other employees, the time-keepers, first-aid men, and warehousemen. The time-keeping on the work, including that of the shovel crew, was done by federal employees. The employees of the city directed the excavation work by placing stakes in the ground and otherwise indicating where the shovel was to be used. Mr. Allen, the city's superintendent, when asked about his authority over the work, testified: "Q. If you gave an order on a particular job to do it a certain way, and Mr. Clow would give an order a different way, whose order would govern, do you know? A. Mr. Clow's. Q. Whose orders in regard to how the work was to be done, where the work was to be done, whose orders would govern,—yours? A. No; I never felt at any time that my word was the last word on the job. As a matter of fact I know it was not. If there was ever a question came up and it was anything of moment, the WPA engineer was superior to me. . . . I was subservient to them (the government) at least I always felt I was, and I know I was; I mean that was well fixed; *that was definite.*" Mr. Ketring testified that he had no jurisdiction over the men working on the shovel; that he was only interested as to where the dirt was moved to establish the width of the road according to their specifications. It was further shown that Mrs. Robare received her pay for the use of the shovel direct from the federal government, and that she in turn paid for repairs and gasoline for the shovel, and for the salaries of the two men employed thereon.

No case has been cited by petitioner from this jurisdiction, where under a similar state of facts the injured workman was not a relief worker. However, petitioner cites the cases of *County of San Bernardino* v. *Industrial Acc. Com.,* 1 Cal. App. (2d) 598 [37 Pac. (2d) 122], and *Board of Education* v. *Industrial Acc. Com.,* 3 Cal. App. (2d) 411 [39 Pac. (2d) 521], as being in point. While in those cases the injured was in the category of a "relief worker" doing work upon a relief project, and there, as here, it was sought to hold the public entities upon which the work was being done for compensation to the injured, the decisions therein rendered annulling the awards, were not predicated entirely

upon the fact that the injured were "relief workers". In those cases the court pointed out that the essential characteristics of a contract of hire entered into between the injured and the entities benefited, were not present.

It has been judicially determined in other jurisdictions that work being done by federal relief agencies is not for the benefit of the local community and that the political entity thereby benefited is not the employer within the meaning of the Workmen's Compensation Insurance Act. In *Hoover* v. *Independent School Dist.*, 220 Iowa, 1364 [264 N. W. 611], a case very similar in its facts to the one before us, it was said: "The claimants in this case were not on relief, nor had they ever been on relief. They were all painters. After the Civil Works Administration was organized, they applied for and received employment from the Civil Works Administration for Page County. . . . They were directed by the Civil Works Administration as to when and where to work. We think there is no question but what they were employees. The problem is to identify the employer. The theory of the claimants is that while the Federal government was the general employer of these men, the school district was their special employer. . . . The circumstances in this case are such that it cannot possibly be said that there was any contract of service, express or implied, between these workers and the school district. The workers were employed, told when and where to work, and paid for their services, by the Civil Works Administration. The contract of service which these workers had was entirely with the Civil Works Administration. . . . Without reference to the details, it is sufficient to say that the particular project on which these men were working was carried on as a Civil Works project, as distinguished from a school district project. That is, the work was being done by the Civil Works Administration. Whatever aid to the project was furnished by the school district was furnished by way of contribution to the Civil Works Administration. The purpose of the Civil Works Administration was to create employment. It was set up under the provisions of the National Industrial Recovery Act, 48 Stat. 195, for that purpose. It undertook these projects with the consent of the public body affected by the project as a means of furnishing employment. The fact that the property of the school district was benefited, and the further fact that representatives of the school

district were present when the work was being done to see that the completed job conformed to its plan for the improvement, are not controlling. The purpose of the Civil Works Administration was being accomplished by carrying out these projects with workmen employed by it. The workmen, therefore, were actually working for the Civil Works Administration when their injuries were received, and the rule of the loaned employee, even if recognized by us, would not apply.'' (See, also, *Todaro* v. *City of Shreveport*, (La. App.) 170 So. 356, 360.)

█ The facts here existing do not support the finding of the commission that the city was a special employer. Here the city did not employ the men on the project. It supervised the work, to a certain degree, using such men as were assigned thereto by the Works Progress Administration, the latter paying their wages. As regards the shovel crew, the project funds were paid direct to the owner of the shovel and by her to the crew. The owner of the shovel was an independent contractor, whose contract was with the government under its relief program, and not with the city. In the absence of a contract of employment between the city and the owner of the shovel or crew these men cannot be held to be the employees of the city regardless of the right of the city to exercise some control over them. This result is not altered by the fact that the federal government expressly contracted that the shovel crew were not its employees.

Courts have judicially noticed the fact that the primary objective of the Federal Emergency Relief Act of 1935 was not to benefit particular municipalities or localities, but to provide relief for unemployment. By contributing a small part of the necessary expense and by contributing the services of a superintendent and a small number of employees the City of Los Angeles was able to obtain the benefit of this project. It was not, however, city work of which the city had control, but was under the rules and regulations of the Emergency Relief Administration. (*Hoover* v. *Independent School Dist.*, *supra; Shelton* v. *City of Greenville*, 169 Tenn. 366 [87 S. W. (2d) 1016]; *Todaro* v. *City of Shreveport*, *supra.*)

In view of the conclusion here arrived at, that no contract, express or implied, existed between the injured workman and the city and that the latter therefore was not a special em-

ployer, the question of whether or not a claim against the city was properly filed by the applicant need not be considered.

The award against the City of Los Angeles is annulled.