[COMMENT1] 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-382-CV

 

 

IN RE XTO RESOURCES I, LP,                                                   RELATOR

AS
SUCCESSOR TO ANTERO 

RESOURCES
CORPORATION AND 

XTO
RESOURCES I GP, LLC

 

 

                                              ------------

 

                                    ORIGINAL
PROCEEDING

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Relator XTO Resources I, LP (AXTO@) seeks
mandamus relief from a trial court order compelling XTO to furnish to Real
Parties in Interest (collectively, AThreshold@) data
consisting of subsurface gas reserves related to certain gas leases in Wise
County, including reserve estimates and future revenue projections.  We hold that XTO established that the data
are trade secrets and that Threshold failed to show that disclosure of the
information is necessary to prevent fraud or injustice, and we conditionally
grant the writ of mandamus.








                                            Background

Threshold sued XTO, alleging
that XTO breached contracts with Threshold by failing to reassign acreage that
was not developed in accordance with the continuous-development obligations
contained in certain gas leases. Threshold alleges that XTO=s failure to reassign the acreage caused it significant damages
because the acreage is no longer available for reassignment. 

Threshold served requests for
production on XTO, seeking, among other things, documents stating XTO=s reserve estimates, recoverable gas reserve estimates, and projected
future revenues for all wells covered by the leases and identifying Aproved undeveloped acreage@ and Aproved
developed not producing acreage@ on the leases.  XTO objected to
the requests, asserting that the information Ais confidential and proprietary and closely guarded by XTO@ and that Threshold could calculate its alleged damages from
publicly-available production data. 

Threshold filed a motion to
compel, arguing that the requested information would Aassist@ their
expert and that XTO=s
confidentiality concerns could be addressed by a confidentiality
agreement.  XTO filed a response,
asserting that the requested data are trade secrets. 








The trial court held a
hearing on Threshold=s motion to
compel.  Threshold=s expert witness testified at the hearing, and XTO submitted the
affidavits of two employees.  We will
discuss the testimony and affidavits in detail later in this opinion.  At the conclusion of the hearing, the trial
court granted the motion to compel and signed an order overruling XTO=s objections to five of six requests for production and ordering
production of the subject data within fourteen days.  XTO petitioned this court for mandamus relief
from the order.

                                       Standard of Review

Mandamus will issue to
correct a discovery order if the order constitutes a clear abuse of discretion
and there is no adequate remedy by appeal. 
In re Colonial Pipeline Co., 968 S.W.2d 938, 941 (Tex. 1998)
(orig. proceeding); Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992)
(orig. proceeding).  A trial court abuses
its discretion and no adequate remedy by appeal exists when a trial court
erroneously compels production of trade secrets without a showing that the information
is Anecessary.@  In re Bass, 113
S.W.3d 735, 738, 745 (Tex. 2003) (orig. proceeding).

                                             Discussion








Under rule of evidence 507,
trade secrets are privileged from disclosure if the allowance of the privilege
will not tend to conceal fraud or otherwise work injustice. Tex. R. Evid. 507.  The party asserting
a trade secret privilege has the burden of proving that the discovery
information sought qualifies as a trade secret. 
In re Bass, 113 S.W.3d at 737; In re Cont=l Gen. Tire, Inc., 979 S.W.2d 609, 612B3 (Tex. 1998); see also In re CI Host, Inc., 92 S.W.3d 514, 516
(Tex. 2002). The burden then shifts to the party seeking the trade secret
disclosure to establish that the information is necessary for a fair
adjudication of a claim or defense in the litigation.  In re Cont=l Gen. Tire, Inc., 979 at 612B13.

1.                 
Are the data trade secrets?

To determine whether information is a trade
secret, Texas courts apply a six-factor test adopted from the Restatement of
Torts.  In re Bass, 113 S.W.3d at
739.  The
Restatement factors are (1) the extent to which the information is known
outside of his business; (2) the extent to which it is known by employees and
others involved in his business; (3) the extent of the measures taken by him to
guard the secrecy of the information; (4) the value of the information to him
and to his competitors; (5) the amount of effort or money expended by him in
developing the information; and (6) the ease or difficulty with which the
information could be properly acquired or duplicated by others.  Id. (quoting Restatement of Torts ' 757 cmt. B (1939) and Restatement
(Third) of Unfair Competition ' 39 reporter=s n. cmt. d (1995)).  The party
claiming a trade secret is not required to satisfy all six factors because
trade secrets do not fit neatly into each factor every time, and other
circumstances may be relevant to the trade secret analysis.  Id. at 740.  A court must weigh the factors in the context
of surrounding circumstances to determine whether the data in question are
trade secrets.  Id.













In In re Bass, the
supreme court held that the 3-D geological seismic data at issue in that case
were trade secrets.  Id. at
742.  The court first noted that A[i]t is undisputed that the oil and gas industry typically treats
seismic data and all other methods of obtaining subsurface geological data as
trade secrets.@  Id. at 740B41 (collecting cases from other jurisdictions).  The court then analyzed each of the six
Restatement factors in light of the circumstances.  Id. at 741.  The evidence established that (1) Bass at all
times maintained the confidentiality of the data and never showed the data to
anyone except its employees and agents; (2) only four peopleCall of whom were Bass=s agents or employeesChad access to the data; (3) the data were kept in a vault accessible
only to those who knew the combination, and employees needed a security card
just to enter the work area; (4) the data were a Avital commodity@ upon which
all interpretation of the land=s value was based and had a monetary value of between $800,000 and
$2,200,000, both of which values highly favored trade secret protection; (5)
the seismic shoot took several months to complete at considerable expense and
inconvenience, though there was no evidence of a specific monetary cost; and (6)
duplicating the data would be difficult and expensive and would require Bass=s permission to conduct another seismic shoot, and licensing the
exiting data from Bass would also be expensive. 
Id. at 741B42.  The court held that all of the factors except
the fifth, for which there was no specific evidence, weighed in favor of
deeming the data trade secrets.  Id.
at 742. Thus, the court held that the data and its interpretations were trade
secrets.  Id.

In this case, XTO presented
evidence on all six factors by way of affidavitsCevidence that is similar to the evidence in In re Bass.  But before we turn to the affidavits, we must
consider XTO=s assertion
that Threshold conceded that the data are trade secrets at the hearing on the
motion to compel.  At the hearing,
Threshold=s counsel
argued as follows:

We=ve also, I think, simplified
that issue for the Court, your Honor, because I think both parties, by looking
at the briefing, agree that there=s a two-part test.

 

This first part being whether or not the
information being requested by [Threshold] is confidential.  And we concede it=s
confidential.  We=re
not fighting about that.

 

They, being the Defendant, XTO, has submitted two
affidavits to establish the confidentiality of the information we=re
seeking.

 

. . . .

 

I think we=d be disingenuous to this
Court to argue over that issue.

 

. . . .

 

The second issue,
your Honor, the one that entitles us to this information, is whether or not
it=s
necessary, and whether or not there=s
good cause for it to be disclosed. 
[Emphasis added.]

 








Threshold=s counsel then presented testimony from its expert witness, Richard
Strickland, regarding the usefulness of the data in completing Strickland=s analysis.  At no time during
the hearing did Threshold specifically address the question of whether the data
are trade secrets.

In its brief in this court,
Threshold denies that it conceded that the data are XTO=s trade secrets.  But it is
difficult to fathom what Threshold intended to concede if it did not concede
that the data are trade secrets.  The
quoted portion of counsel=s trial
court argument paraphrased the two-part, burden-shifting test governing the
disclosure of trade secrets, i.e., (1) the information=s trade-secret status and (2) the necessity of the information to a
fair adjudication of a claim or defense. 
The remainder of counsel=s argument focused solely on the necessity of the information to a
fair adjudication, just as though the information=s trade-secret status were conceded or established beyond
dispute.  But for the fact that counsel
did not say the words Atrade secret@ in his argument, it would appear to be a clear concession that the
data are trade secrets.

Nevertheless, because
Threshold now denies that it made such a concession and the concession on the
record is not unequivocal, we will evaluate the data in light of the six
Restatement factors.  We conclude that
XTO established the data=s
trade-secret status.








XTO submitted to the trial
court the affidavits of two XTO employees: 
Kenneth Staab, a senior vice president of engineering; and Kara
Sherwood, the supervisor of digital log data. 
Relevant to the first Restatement factorCthe extent to which XTO=s reserve estimates and projected revenues are known outside of XTOCStaab averred that his entire department, with a staff of thirty-one
persons, works exclusively to evaluate XTO=s reserves and compile data for XTO=s independent contractors who create reserve forecasts for XTO.  See id. at 741.  While some of the underlying data are
publicly available, the forecasts and conclusions of XTO and its consultants
are not.  Staab said that the SEC
requires the disclosure of certain global, aggregate information; otherwise,
the data are not made publicly available and are not disclosed to anyone
outside of XTO, with the exception of the consultants involved in the
forecasting process and, on occasion, to working-interest owners who have a
need to know the information.  While not
as compelling as the evidence in In re Bass, this factor weighs in favor
of trade secret status.  See id.








The second factor involves
the extent to which the information is known by employees and others involved
in XTO=s business, and the third factor considers the measures taken to
control the security of the information. 
See id. at 741B42.  Staab averred that the data
are carefully guarded and are obtainable only by XTO personnel on a
need-to-know basis.  He said that the raw
data and the reserve evaluations are maintained in a secure area above the
company=s third floor, access to which requires a card key.  Reserve data stored offsite Ais stored at places with strict security measures in place.@  This uncontested evidence
suggests that XTO limits the information within its own organization and
vigilantly guards the data, meeting the second and third Restatement factors.

Under the test=s fourth factor, the information=s value to XTO and its competitors must be taken into account.  See id. at 742.  Staab averred that the information is highly
valuable to the company because it directly affects the company=s decisions as to whether it is economically feasible to develop a
given property.  He said that the
information gives XTO a competitive advantage in the marketplace and that if
the information were disclosed, XTO would lose that advantage because it would
give competitors insight into the methodology by which XTO evaluates
reserves.  While Staab did not state a
dollar cost for developing the precise data sought by Threshold, he averred that
the thrity-one persons in his department have a collective annual salary Aapproaching $2,000,000.00@ and that XTO pays Ahundreds of thousands of dollars@ annually to independent consultants to help evaluate its
reserves.  Though these sums are not
attributable to the specific data sought by Threshold, they are some evidence
of the information=s value to
XTO.  This factor weighs in favor of
trade-secret status.  It also weighs in
favor of trade secret status on the fifth Restatement factor, which considers
the amount of money expended by XTO in developing the data.  See id.








The final factorCthe ease or difficulty with which the information could be properly
acquired or duplicated by othersCis somewhat less compelling. 
Staab averred that some of the data underlying its reserve and revenue
calculations are publicly available from the Texas Railroad Commission.  Likewise, Sherwood averred that well data are
available from third-party vendors for a fee and from the Railroad Commission
for free.  Staab further averred that
Threshold could use the publically-available data to develop its own reserve
projections.  But it is not the
underlying data that XTO contends are secret so much as the process of
transforming the raw data into reserve estimates and the estimates themselves.  In other words, Threshold could use readily
available data to make its own reserve calculations, but those
calculations would not necessarily match those of XTO; and it is the difference
between the calculations that XTO claims is a secret that gives it a
competitive advantage.  Thus, the sixth
Restatement factor also weighs in favor of trade secret status.

We therefore hold that the
data sought by Threshold are trade secrets protected by rule 507.

2.                 
Are the data necessary for a fair adjudication?

We must now turn to the second prong in the rule
507 analysis and determine whether Threshold carried its burden of showing that
the reserve and revenue estimates and other trade secrets are necessary to a
fair adjudication of Threshold=s
claims.  See id. at 743; In re
Cont=l Gen.
Tire, 979 S.W.2d at 613.








The supreme court addressed the question of what a
requesting party must show to establish necessity in In re Continental
General Tire.  979 S.W.2d at 611B12. 
Looking to the approaches taken by other jurisdictions that had adopted
rules identical or virtually identical to rule 507, the court noted that a
requesting party must establish more than mere relevance to discover trade
secrets; otherwise, the statutory privilege would be meaningless.  Id. at 611 (citing Bridgestone/Firestone
v. Superior Court, 9 Cal. 2d 709, 712 (Cal. Ct. App. 1992)).  The party seeking to discover a trade secret
must make a particularized showing that the information is necessary to the
proof of one or more material elements of the claim and that it is reasonable
to conclude that the information sought is essential to a fair resolution of
the lawsuit.  Id.  It may be theoretically possible for a
party to prevail without access to trade secret information and yet be unfair
to put him to much weaker proof without the information.  In re Bridgestone/Firestone, Inc., 106
S.W.3d 730, 732 (Tex. 2003) (orig. proceeding). 
But the test cannot be satisfied merely by general assertions of
unfairness.  Id.  Nor is it enough to show that the information
would be useful to the party=s
expert; the party must show that it is necessary.  In re Cont=l
Gen. Tire, 979 S.W.2d at 611 (analyzing Bridgestone/Firestone, 9
Cal. 2d at 713, 716)).  The court must
weigh the degree of the requesting party=s
need for the information against the potential harm of disclosure to the
resisting party.  Id. at 613.








With this standard in mind, we turn to the
testimony of Threshold=s
expert witness, Richard Strickland, a petroleum engineer asked to calculate
reserve estimates for Threshold for the leases in question.  Strickland testified as follows:

Q.        Would
it assist you if you had that information made available to you?

 

A.        Yes.  I=d
like the full suite of logs, in order to do my evaluation; not just . . . the
resistivity logs that=s
available. 

 

. . . .

 

Q.        And
is it necessary for your report to be as thorough as possible to gain access to
both [publicly-available logs and XTO=s
logs]?

 

A.        My
job is to opine a value of the [disputed acreage], had it been developed in a
timely fashion.  

 

And in order to bring to the Court a -- number
that has the least amount of uncertainty, and to assist the Court in their
deliberations.  Then it is common to have
what is commonly known as the well file on the -- on the well, and so that
would be both internal and external data. 

 

. . . .

 

Q.        Would
it be of benefit to you, and is it necessary for you to see that information
[concerning reserve estimates and valuation forecasts] in order to help
fully prepare your opinion in this case?

 

A.        It certainly would be very helpful, yes. 

 

. . . .

 








Q.        And
would that information [concerning wells in the surrounding area] be of
assistance to you in formulating your opinions?

 

A.        It certainly would.

 

Q.        And
is it necessary for you to have data in order to have accurate and complete
opinions?

 

A.        To
bring a value number forward with the least amount of uncertainty; yes, I
need all the information I can get. 
[Emphasis added.]

 

To summarize, Strickland testified that he Awould like@
to see a full set of well logs and that these and other data would Aassist@
and Ahelp@ him to prepare a report Awith the least amount of uncertainty.@ 
Strickland conceded thatCas
Staab and Sherwood testifiedCwell
logs containing at least some of the underlying data were available from other
sources.  And Strickland did not testify
that he could not form an opinion without the requested information.








We hold that Threshold failed to carry its burden
of showing that production of XTO=s
trade secrets is necessary to a fair adjudication.  Strickland testified that the data would be
helpful, not that they were necessary.[1]  Weighing Threshold=s desire for information that would Aassist@ and Ahelp@ its expert
prepare a report Awith the
least amount of uncertainty@ against XTO=s desire to
maintain its competitive advantage by protecting its trade secrets, we hold
that the trial court abused its discretion by ordering the production of the
data in question.[2]

Having determined that XTO
established that the subject data are trade secrets, that Threshold failed to
show necessity, and that the trial court abused its discretion by compelling
the data=s production, we hold that XTO has no adequate remedy at law and is
entitled to mandamus relief.  See In
re Bass, 113 S.W.3d at 745.

                                             Conclusion








We sustain XTO=s second issue and do not reach its remaining issues.  See Tex.
R. App. P. 47.1.  We conditionally
grant XTO=s petition
for writ of mandamus.  We are confident
that the trial court will vacate its October 29, 2007 order compelling
production, and the writ will issue only if the trial court fails to do so.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   CAYCE, C.J.; GARDNER and WALKER, JJ.

 

WALKER, J. filed a dissenting opinion.

 

DELIVERED:
March 26, 2008

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 








 




 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-382-CV

 

 

IN RE
XTO RESOURCES I, LP, 

AS
SUCCESSOR TO ANTERO

RESOURCES
CORPORATION AND

XTO
RESOURCES I GP, LLC

                                                                                                        

                                              ------------

 

                                    ORIGINAL
PROCEEDING

 

                                              ------------

 

                                   DISSENTING
OPINION

 

                                              ------------








I agree with the majority
that trade secrets are privileged from disclosure if the allowance of the
privilege will not tend to conceal fraud or otherwise work injustice.  See Tex.
R. Evid. 507.  I also agree with
the majority that the party asserting a trade secret privilege has the burden
of proving that the discovery sought qualifies as a trade secret and that the
burden then shifts to the party seeking the trade secret disclosure to
establish that the information is necessary for a fair adjudication of a claim
or defense in the litigation.  See In
re Bass, 113 S.W.3d 735, 737 (Tex. 2003) (orig. proceeding); In re
Colonial Pipeline Co., 968 S.W.2d 938, 941 (Tex. 1988) (orig.
proceeding).  I dissent from the majority=s opinion, however, because the majority has wholly skipped over the
primary argument asserted by Real Parties in Interest (collectively AThreshold@) that the
trade secret information it seeks will Anot tend to work injustice@ and is Anecessary
for a fair adjudication of a defense in the litigation.@  See Tex. R. Evid. 507; Bass, 113
S.W.3d at 737. 

Relator XTO Resources, I, LP
(AXTO@), in its
responses to Threshold=s requests
for disclosure of XTO=s defensive
theories and the general factual basis for the defenses, specifically asserted
that one of its defenses was as follows: AWith respect to Plaintiffs= [Threshold=s] claims
that [XTO] failed to reassign undeveloped portion of the H Leases and
Huddleston Trust Leases, Plaintiffs [Threshold] have failed to this point to
demonstrate the nature and/or amount of harm, if any, to a legally sufficient
degree.@  Thus, at the trade secrets
hearing before the trial court, Threshold argued, 

Your Honor, . . . we think they have, based on
their objections, a presentation of management that says we think this well
will be worth AX.@  That=s one of the very questions
at hand. 

 

. . . . 

 

They can=t [hide] their opinions.  In other words, they=ve  - - they=ve had puds on this same
acreage.  Those puds had some - - value
assigned, and as [of] Friday they told us that Plaintiffs have failed to
demonstrate the nature and amount of harm in any - - to legal degree of
sufficiency.








And they=re saying there is no
damage.  They agree that they=ve
breached some obligations that were not damage.

 

Well, we=d like to show that within
their own corporate documents they [have] given value to these leases.  They=ve given reserve estimates to
these leases.

 

Likewise, Threshold, in its reply brief in
response to XTO=s petition
for a writ of mandamus explained to this court,

XTO
suggests that, although there was a breach, the damages resulting from that
breach are minimal or even nonexistent. 

 

        .
. . .

 

In an effort
to address damages, Plaintiffs have requested that XTO produce data that
supports the calculations of the reserves booked by XTO underlying the Wise
County leases.  This will help Plaintiffs
and their expert(s) verify their damage model. 
Of equal if not greater significance, it will enable them to
discredit the position currently being taken by XTO.  This latter point, though expressly raised in
Plaintiffs= Second
Motion to Compel, is wholly ignored by XTO. 
[Emphasis added.]

Threshold further explained in its brief to this
court,

XTO has no basis to contend it did not breach its
obligation to reassign approximately 1,249 acres to Threshold.  Thus, it simply says its breach did not
damage Threshold.  It would be patently
unfair to permit XTO to tell the jury Plaintiffs are due no damages but not to
allow Plaintiffs to see basic data that XTO keeps outside the context of this
litigation which Plaintiffs can use to establish their damages.  Unless they are allowed to explore this,
Plaintiffs cannot receive a fair trial. 

 

. . . . 

 








Stated succinctly, and in the language of Rule
507, disclosure is required to prevent an injustice.  Without it [disclosure here] Plaintiffs are
hampered in refuting XTO=s
claim that damages are absent.  

 

Thus, in its motion to compel disclosure at the
trade secrets hearing, and before this court, Threshold continuously pointed
out the injustice of permitting XTO to rely on the defense that Plaintiffs were
not damaged by XTO=s failure to
reassign particular leases to Threshold, but yet to permit XTO to shield from
disclosure XTO=s own
corporate documents showing that internally XTO had assessed a dollar value to
the same leases and wells that it had failed to reassign to Threshold.

Because this argumentCthat allowance of the trade secret privilege would tend to work an
injustice by preventing a fair adjudication of XTO=s no-damages defense by preventing Threshold from discrediting this
position taken by XTOCappears to
raise an alternative ground for affirming Judge Fostel=s ruling, and because the majority fails to address it, I respectfully
dissent. 

 

SUE WALKER

JUSTICE

 

DELIVERED: 
March 26, 2008

 

 











[1]The
dissent quotes extensively from the argument of Threshold=s
counsel before the trial court and in its brief in this court that allowing XTO
to shield its trade-secret reserve estimates from Threshold while XTO denies
that Threshold suffered any damages would work an injustice.  But the argument of counsel is insufficient
to support the discovery of trade secrets; a party must present evidence.  See In re Cont=l
Gen. Tire, 979 S.W.2d at 615 (ARegardless
of whether this theory [argued by counsel] might otherwise justify discovery of
the [trade secret information], an issue on which we express no opinion,
plaintiffs presented no evidence supporting this theory to the trial court.@).  Moreover, the trade-secret data identified in
counsel=s
argument is the same data that Strickland testified would Aassist@ or Ahelp@ him;
he did not testify that the data were necessary avoid injustice.  





[2]The
parties also argue about whether Threshold and XTO are direct competitors in
the oil and gas market.  The record is
devoid of evidence one way or the other. 
But even if Threshold does not compete directly with XTO, XTO is
entitled to trade secret protection under rule 507 because Threshold failed to
show necessity.  See id. at 615
(holding that plaintiff in defective-tire case, who was clearly not in
competition with defendant tire manufacturer, was not entitled to discover
manufacturer=s
trade secrets absent a showing of necessity).















 [COMMENT1]

Majority Opinion by Justice
Gardner; Dissenting Opinion by Justice Walker